SOUTHERN SURETY COMPANY *v.* NATIONAL LUMBER COMPANY.

[No. 9,763.    Filed April 1, 1919.    Rehearing denied June 20, 1919.    Transfer denied July 7, 1920.]

1. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Liability of Surety.—Materials Constituting Appliances.*—No action can be maintained on a contractor's bond providing for the payment for all materials used in the construction of a sewer, for lumber used as an appliance to hold the banks of earth in place, while the trench was being excavated, even though by repeated use on the same work such lumber finally was worn out and rendered of no value.    p. 602.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Conditions.—Statute.*—As §8698 Burns 1914, Acts 1905 p. 219, does not expressly prescribe what conditions should be contained in the bond given by a contractor who has been awarded a contract for a municipal improvement, but leaves the terms to be fixed by the board of public works, the courts have no power to add other conditions to those fixed by the board, and the surety has the right to stand upon the terms of the bond as written.    p. 603.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the National Lumber Company against the Southern Surety Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Floyd A. Deahl* and *Louis M. Hammerschmidt,* for appellant.

*Eli F. Seebiert* and *Daniel D. Schurtz,* for appellee.

ENLOE, J.—This was an action upon a contractor's bond. It appears from the record that in April, 1913, the city of South Bend, by its board of public works, entered into a contract with the Interstate Construction Company for the construction by said company of a public improvement, known and designated as Bowman Creek Trunk Sewer; that shortly thereafter said construction company, with the consent of said board of public works, assigned its said contract to Samual L. Sheets and George Stewart, a copartnership, doing business under the firm name and style of Stewart, Sheets and Company, who constructed said sewer. Appellant was surety on the construction bond of Stewart, Sheets and Company.

Thereafter said Stewart, Sheets and Company sublet to one R. C. Koegan, a portion of its said contract—labor in excavating and filling ditches and in laying brick—in the construction of said sewer.

It further appears that said Koegan procured of appellee certain lumber to be used for "sheeting and bracing," in the trenches to be by him excavated, and that appellee delivered the same on the ground and along the trench where said Koegan under his contract was to labor. This lumber and material not having been paid for, suit was brought by appellee against the appellant on its bond and also against Stewart, Sheets and Company, and R. C. Koegan. The complaint was in four paragraphs; to the first, second and third of which several demurrers were addressed by appellant for want of facts, and which demurrers were overruled. Appellant then answered in five paragraphs, to the second of which a demurrer was sustained, and appellee replied in general denial to the third, fourth and fifth paragraphs of appellant's answer.

The issues thus formed were submitted to the court

594     APPELLATE COURT OF INDIANA,

Southern Surety Co. *v.* National Lumber Co.—73 Ind. App. 592.

for trial, which, at the request of the parties, made a special finding of the facts and stated its conclusions of law thereon, to which conclusions of law the appellant duly excepted, and, over appellant's motion for a new trial, judgment was rendered in favor of plaintiff and against each of the defendants, in the sum of $294.19 and costs, from which judgment the Southern Surety Company prosecuted this appeal.

The errors assigned and not waived challenge: (1) The correctness of the conclusions of law upon the facts found; (2) overruling the motion for a new trial; (3) errors, severally, in overruling demurrers to first, second and third paragraphs of complaint.

There is no material contention between the parties hereto as to the ultimate facts of this case, but they have widely different views as to the law which should govern these facts. This requires an analysis of the facts found by the court that we may correctly apply the law thereto.

The contention of the appellant herein centers around two propositions, viz.: (1) That, as the lumber and materials sold and in question in this suit, did not, as shown by the special finding, enter into and become a part of the completed work, but were *only used as appliances* to hold the banks and prevent the sides of the trench from caving in while the work of excavating said trench was being performed, and were thereafter removed from said trench; that they were simply the property of such subcontractor, and not within the terms of said contract and bond, providing for the payment for "all labor and materials used in said work." (2) That the special findings show that the material in question was sold to a subcontractor to be by him used *as an appliance* for the carrying on of his work, and that therefore the payment for the same is not, as to appellant, within the terms of said contract and bond in suit.

In determining these questions it becomes material at the outset to notice the language of the contract and bond, for they must be construed together in determining the undertaking and consequent liability of appellant.

The contract as entered into between the city of South Bend and the Interstate Construction Company provided, among other things that "said party of the second part, agrees to pay for all labor and material used in said work, except engineering, * * *." When said contract was, by the Interstate Construction Company, assigned to Stewart, Sheets and Company, they accepted such assignment, and in such written acceptance agreed as follows: "We do hereby contract and agree to carry out, construct and complete all the work contemplated by said contract, and by the specifications and plans which are made a part thereof, and to do and perform all as in said contract provided."

The bond given to secure the performance of said contract, signed by appellant as surety thereon, provided:

"Now, if the above bounden Stewart, Sheets & Company shall faithfully comply with the attached contract (and the drawings and specifications therein referred to) made and entered into by the Interstate Construction Company, on the 11th day of April, 1913, with the City of South Bend, Indiana, for the construction of said Bowman Creek Trunk Sewer, and shall fulfill all the conditions and stipulations therein contained, according to the true intent, and meaning thereof in all respects, then this obligation shall be void, otherwise," etc.

The contract between Stewart, Sheets and Company and R. C. Koegan, so far as material to the questions now before us for consideration, was as follows:

"We make you this proposition—to give you 60c per yard for all dirt taken out of the trench where pipe is to be laid, and $7.00 per thousand for all brick lain in pipe, and to furnish you all the work

you can do clear through to the completion of the Bowman Creek Sewer job, in the city of South Bend, Indiana. Said work to be done under the supervision and to the entire satisfaction of the City Engineer, and the Board of Public Works of the City of South Bend, Indiana,—60c is to include all sheeting and bracing, filling and surfacing of streets, and disposing of surplus dirt."

The trial court found that R. C. Koegan purchased of appellee the lumber in question, amounting to the sum of $294.19, telling appellee at time of purchase that it was to be used in constructing Bowman Creek Sewer; that appellee delivered the lumber to Koegan, at or near the place where he was to construct the part of sewer contracted by him; that part of the lumber so furnished was used for sheeting and braces to prevent the earth from caving or falling into the excavated trench; that the sheeting was an appliance used by said Koegan to facilitate his work in digging the trench; that no part of lumber used as sheeting and braces went into the permanent construction of said sewer, nor became in any manner a part of said sewer, nor remained in the sewer or trench, after the sewer was completed, nor was consumed in the construction of said sewer; that Koegan took away and removed a portion of said lumber, after he abandoned his contract; that the lumber used for sheeting and braces was removed from said trench by Stewart, Sheets and Company and placed in a pile near said trench; that thereafter Stewart, Sheets and Company did not use or appropriate any part of the lumber delivered by appellee to said Koegan.

The particular question presented for our consideration seems not to have received consideration heretofore, by either our Supreme or Appellate Court, but has been considered by courts in other jurisdictions.

In the case at bar, no mechanic's lien could have been taken against the property, it being a public improve-

ment, but, while this is true, we find the language used in the contract and bond in case at bar to have been frequently used in cases where liens could have been asserted against the land and improvements thereon, and courts have frequently declared the meaning and application of such contracts. Also, we find, numerous statutes giving a right to assert a lien against the property for materials "used," or "furnished to be used" in the construction or improvements.

In the case of *Stimson Mill Co.* v. *Los Angeles Traction Co.* (1903), 141 Cal. 30, 74 Pac. 357, which was a suit to foreclose a lien for materials furnished by plaintiff in the construction of a bridge, it appeared that a part of the lumber furnished went into a temporary structure and was afterward carried away by the contractors. The court in passing upon the matter said: "The contention of the appellant on this point must, we think, be sustained. It is settled by many decisions in this state that to entitle a materialman to a lien under section 1183 of the Code to Civil Procedure, the materials must be furnished to be used, and must actually be used, in the construction of the building or other structure against which the lien is sought to be enforced (citing authorities) ; and this we understand means that the materials must be used, not merely in the process of construction, but 'in the structure,'—that is to say, they must be used as the materials of which it is constructed." Citing authorities. Continuing, the court said: "The temporary structure was put in merely for the purpose of supporting the track until the steel necessary for its permanent support could be obtained. This was done by the contractors on their own account, * * *. The temporary structure was therefore not a part of the bridge, either as contracted for or as actually completed; but it remained the property of the contractors, who were entitled to remove it.

Hence neither the contractors, nor the plaintiff as furnisher of the materials for it become entitled to a lien."

In the case of *Oppenheimer* v. *Morrell* (1888), 118 Penn. 189, 12 Atl. 307, the court said: "During the progress of the work, and with knowledge of said contract, Morrell, plaintiff below, furnished to Burkett, on the credit of the building, lumber for the purpose of erecting scaffolding to be used in laying the brick, and the same was so used." The statute of Pennsylvania under which such lien was sought to be enforced read as follows: "That every such building shall be subject to a lien for the payment of all debts contracted for work done or materials furnished for or about the erection and construction of the same." In denying the claim for a lien the court said: "Such a claim is no more within the purview of the statute than would be one for pickhandles furnished to facilitate the work of excavating the foundation for the building."

In the case of *Kennedy* v. *Commonwealth* (1903), 182 Mass. 480, 65 N. E. 828, which was an action to enforce liability on bond, it appeared that the plaintiffs had furnished lumber to defendants, for use in the construction of a pumping station and gate house; that such lumber was used for the purpose of constructing forms to hold the concrete in place while it was hardening, and centers to hold up the concrete arches, after which it was taken down and again used in other places, and it was held that the plaintiffs were not entitled to a lien for such materials.

The statute of Massachusetts provides that the party furnishing materials shall have a lien for "materials furnished and actually used in the erection, etc." In passing upon the question the court said: "We are of opinion that this statute gives security for payment for labor performed or furnished and for materials only when they are used in construction or repair in a way

## MAY TERM, 1920. 599

Southern Surety Co. v. National Lumber Co.—73 Ind. App. 592.

that would create a debt which might be a subject for a lien, under proper proceedings, if the structure belonged to a private person. * * * To acquire a lien for materials under the Pub. Sts. c191, §1, (R. L. c191, §1) it is necessary to show that the materials will form a part of the completed structure—that they will enter into it and become a part of the realty." Citing authorities.

In the case of *Rittenhouse, etc., Co.* v. *Brown & Co.* (1912), 254 Ill. 549, 98 N. E. 971, which was a suit to enforce a lien for lumber furnished to a subcontractor, it appeared that the lumber was furnished for the purpose of being used to construct false work, the molds and forms into which the concrete was poured. It was afterwards taken away.

The court, in denying the right to a lien said: "The words 'used in such building or improvement' and 'used in construction' here mean, in our judgment, more than employed in the process of construction as a means for assisting in the erection of the building. They mean used as a part of the construction so that the material becomes a part of the completed structure. * * *" The lumber furnished by the appellant was not destroyed by the use made of it though depreciated in value, as no doubt were the tackle, implements, apparatus and tools employed in the building. It never became or was intended to become the property of the owner of the building, but belonged to the contractor who bought it, employed it in the temporary use for which he obtained it, and took it away to be used again for his own purposes."

In the case of *Shultz* v. *Quereau Co.* (1914), 210 N. Y. 257, 104 N. E. 621, L. R. A. 1915E 986, Ann. Cas. 1915B 965, which was an action to enforce liens upon and against moneys due the contractor under his contract for materials sold and delivered to a contractor for

use in the construction of a public improvement, the court said, referring to the materials furnished: "They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials." Citing authorities.

In the case of *Basshor & Co.* v. *Baltimore, etc., R. Co.* (1885), 65 Md. 99, 3 Atl. 285, the appellants were seeking to enforce a mechanic's lien for materials furnished in the construction of a bridge. The court, in passing upon the case, said: "When the law says the materialmen shall have a lien for all materials furnished for, or used in and about, the construction of bridges, it means such materials as ordinarily enter into, or are used in the construction of bridges, and which are fairly within the express or implied terms of the contract, between the owner and contractor. It does not mean the machinery that may be used for the manufacture of the materials themselves. * * * The machinery thus used is *the plant of the contractor*, and can in no sense be said to be materials furnished or used in building the bridges."

In the case of *Beals* v. *Fidelity, etc., Co.* (1902), 76 App. Div. 526, 78 N. Y. Supp. 584, which was an action brought upon a contractor's bond to recover the value of certain articles furnished to the contractor, it appeared that the said bond was conditioned that the contractor would " 'well and truly pay for all material used and services rendered in the execution of such contract,' " and that plaintiff Beals had furnished "nails and screws, * * * shovels, wheelbarrows, manila rope, hose, mattocks, sledge handles, belting, wrenches, steam pipes, chains, axes, rubber boots, etc.," and that the nails, screws, and possibly some few other articles were actually used in, and became a part of, the con-

struction under contract. The court said: "The great majority of the articles, however, were tools and implements which, while employed in doing the work in question, survived its performance and could be used upon other contracts." The court further said: "While the undertaking under consideration is to be fairly construed with reference to protecting those for whose benefit the law required it to be executed, we think it is very clear that it did not cover the articles last mentioned. Its purpose was to afford protection to those whose labor performed the work under contract and to those who furnished material which entered into and became a part of, or was naturally consumed in or about the completion of, the work in question. That, however, is as far as its provisions go. Its terms are not broad enough under any reasonable construction to cover tools and implements."

In the case of *Kansas City* v. *Youmans* (1908), 213 Mo. 151, 112 S. W. 225, the court said: "There was error committed in overruling this exception number 16. The articles therein named are such as constitute a part of the contractor's plant, or his tools and implements with which to do the work. Such articles, although worn out in the service, should not and do not fall within the term of materials used in the construction of a sewer or like work. Such articles have usually been classed in the contractor's plant, or tools and implements of work, and not as materials used." Citing authorities.

In the case of *Thomas* v. *Commonwealth* (1913), 215 Mass. 369, 102 N. E. 428, which was an action brought to recover for labor and materials furnished to a contractor building a portion of a public highway, it appeared that the contract provided that such contractor should pay all bills for labor and materials contracted for by him on account of work therein contemplated, and it

furnished satisfactory evidence, etc. It appeared that the materials furnished and for which suit was brought, were used for constructing concrete forms and conduits, and were used only temporarily and were not left in the permanent structure, when finished. The court in denying judgment for such materials said: "It is clear upon the report that the items for boards used for concrete forms and for conduits, for netting, * * * were all properly disallowed, * * *." Citing authorities. See, also, *Potter Mfg. Co.* v. *Meyer & Co.* (1909), 171 Ind. 513, 519, 86 N. E. 837, 131 Am. St. 267, and authorities there cited. *Cincinnati, etc., Railroad* v. *Shera* (1905), 36 Ind. App. 315, 73 N. E. 293.

Again it will be noted that, in all of the foregoing cases, the materials held to be appliances were and continued to be the property of the contractor. In the instant case the court found that the material in question had been in part removed by Koegan, thus showing that he considered this material to belong to himself, was his personal property, which he might remove and thereafter use on other work, if he should so desire.

From the foregoing authorities it fairly appears to be the rule that no action can be maintained upon a contractor's bond, providing for the payment for all

1. materials used in such construction, where the materials furnished and used constituted an appliance, which, though employed in the work, survive its performance, and can be used upon other contracts; nor are such appliances held to be within the bond even though by repeated use on the same work they are finally worn out and become of no value. The lumber in the case at bar was used as an appliance, to hold the banks of earth in place, while the laborers were excavating the trench; the shovels in their hands were appliances for throwing the earth from the trench; each was an appliance for a particular use, and there is no

more reason for holding one of them to be within the terms of the bond than the other.

The bond in suit was taken by the board of public works of the city of South Bend, under authority conferred by §8698 Burns 1914, Acts 1905 p. 219.

2. By this section of the statute the board of public works was *authorized* to impose upon bidders, not specific, enumerated conditions, to be inserted in the bond, but the conditions to be inserted were left largely with the board of public works, the statute reading: "The Board may by order impose further conditions upon bidders with regard to bond, and surety, guaranteeing good faith and responsibility of such bidders, or insuring the faithful completion of such work according to contract, or for keeping the same in repair for any length of time, or for any other purpose."

As this statute did not expressly prescribe what conditions should be contained in the bond and contract, leaving these to be fixed by the board, the courts have no power to add other conditions to those fixed by such board, and the surety has a right to stand upon the terms of the bond as written.

From the foregoing authorities it is clear that the trial court erred in its conclusions of law. Having reached this conclusion, other assigned errors in this cause become inconsequential.

The judgment of the St. Joseph Circuit Court is therefore reversed, and case remanded, with instructions to the trial court to restate its conclusions of law and enter judgment in harmony with the views herein expressed.