(134 So. 690)

**RESTER v. MOODY & STEWART et al.**
**In re UNION INDEMNITY CO.**

No. 31026.

March 30, 1931.

Rehearing Denied April 27, 1931.

Benj. W. Miller, of Bogalusa (J. C. Henriques, Manning W. Heard, and Wm. E. Westerman, all of New Orleans, of counsel), for relator.

Rich & Jones, of Bogalusa, for respondent.

ODOM, J.

·Moody & ,Stewart entered into a contract with the state, through the highway commission, to build a portion of a public highway in the parish of Washington, designated as "State Project 412–D," and gave bond to secure the faithful performance of the work with the Union Indemnity Company as surety. The contract was made and the bond written in accordance with Act No. 224 of 1918, as amended by Act No. 271 of 1926.

The contractors bound and obligated themselves to construct and complete the road and to "furnish and deliver all material and do and perform all labor necessary for the satisfactory completion of the proposed improvement."

The bond provided that the principal and the surety "are held and firmly bound in solido to the State of Louisiana and unto all subcontractors, workmen, laborers, mechanics and furnishers of materials and supplies," the condition of the bond being such that if the said contractors "shall well and truly perform and construct * * * and shall pay all sums due on materials and supplies used and for wages earned by laborers and workmen employed upon the work to be done * * * and shall do and perform all the labor and work and shall furnish all material as specified in said contract in strict accordance with all the terms of said contract and the plans and specifications thereto attached and made part thereof * * * then this obligation shall be null and void; otherwise, to remain in full force and effect."

The contractors used motortrucks of their own with which to haul gravel and other material used in the construction of the road, and during the progress of the work employed plaintiff to repair the trucks. In making the repairs, plaintiff furnished labor and used material such as casings, inner tubes, bolts, bearings, rivets, springs, a universal joint, a drive shaft, a brake drum, and a used motor, all amounting in value to $154.46.

The contractors failed to pay plaintiff's bill, and he brought this suit in Washington parish, where the work was done, against the contractors and the surety for the amount of the bill, praying for judgment against them in solido.

Both defendants were cited and served. The contractors made no appearance and judgment went against them by default. But

the surety company excepted to the jurisdiction of the court ratione personæ on the ground that its Louisiana domicile was in the parish of Orleans, and that therefore it could not be sued in the parish of Washington.

This exception was overruled. The surety company then excepted to plaintiff's petition on the ground that it set out no cause and no right of action, which exception was also overruled. The surety then filed answer in which it set up the special defense that a surety on public contractor's bond conditioned as required by Act No. 224 of 1918, as amended by Act No. 271 of 1926, is not liable for debts due by its principal for labor done and supplies furnished and used in repairing machines made use of by the contractor in constructing the work. The lower court gave judgment against the surety, and it appealed to the Court of Appeal (130 So. 254) which affirmed the judgment. The surety applied for a writ of review, which was granted, and the record is before us in obedience thereto.

On Exception to the Jurisdiction.

■ The contractors, Moody & Stewart, compose a partnership which has its domicile in the state of Mississippi. But it came to Washington parish and there entered into a contract to build a road in that parish, and when this suit was filed the partnership was in that parish, where the suit was brought, and service was made on J. O. Stewart, one of its members. The suit was properly brought against the partnership in Washington parish. Paragraph 4, § 1, Act No. 179 of 1918; paragraph 5, art. 165, Code of Practice.

■ The Louisiana domicile of the surety on the bond is in the parish of Orleans, but it entered into this contract of suretyship in the parish of Washington, where its principal had engaged to build the road. Its principal being suable in that parish on this cause of action, it was suable there also, under the express provisions of section 8, Act No. 41 of 1894, which reads as follows: "Sec. 8. Be it enacted, etc. No company having signed such bond or bonds shall be permitted to deny its corporate power to execute said instrument, or incur such liability in any proceeding to enforce liability against it thereunder and such company shall be suable in the same jurisdiction as the principal obligee [meaning obligor] on such bond, and citation shall be served on it, or its attorney for service of process, as is by law in such cases provided."

The exception to the jurisdiction was properly overruled.

On the Merits.

The bond is purely statutory, having been given under Act No. 224 of 1918, as amended by Act No. 271 of 1926. The act, as amended, provides that, when public buildings, public roads, or public works of any kind are about to be constructed under a contract in excess of $500 (this contract amounted to approximately $42,000) at the expense of the state or any public board or body, it shall be the duty of the official representative thereof to reduce the contract to writing and "to require of the contractor a bond, with good and solvent and sufficient surety * * * for the faithful performance of the contract * * * and with an additional obligation for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction * * * of such building, road, work or improvement, and for the payment by the contractor and by all subcontractors for all material or supplies furnished for use *in* machines used in the construction, erection, alteration or repair of said building, road, work or improvement," etc. (Italics ours). Act No. 224 of

1918, § 1, as amended by Act No. 271 of 1926, § 2.

The only change made in the original act by the amendment of 1926 was the insertion of the following clause after the word "improvement": "And for the payment by the *contractor and by all subcontractors for all material or supplies furnished for use in ma-chines used in the construction, erection, alteration or repair of said building, road, work or improvement."* (Italics ours.)

So that, whereas the original act required the contractor to give bond only for the faithful performance of the contract and "with an additional obligation for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction, erection, alteration or repair of such building, road, work or improvement," the amendment imposes upon the surety an additional burden or obligation, that is, "for the payment by the contractor and by all subcontractors for all *material or supplies* furnished for use *in* machines used in the construction, erection, alteration or repair of said building, road, work or improvement." (Italics ours.)

Now it is contended by counsel for plaintiff, and was held by the Court of Appeal, that the act of 1926, which extends or enlarges the obligation of the surety so as to cover "material or supplies furnished for use in machines," covers and embraces labor, material, and supplies used in the repair of machines. The Court of Appeal said:

"The statute, in saying 'having furnished material or supplies for use *in* any machine used in the construction of any * * * road,' obviously means materials and supplies for use *on* any machine used in the construction or repair of any road." (Italics ours.)

And again:

"The word 'in,' as used in the act, evidently has the same meaning as the word 'on'; otherwise the amending act would not accomplish what was evidently intended."

We think the court erred in its interpretation of the amendment.

The words of a statute "are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words." Civ. Code, art. 14.

The word "in," in its most usual significance and popular use, means inclosed or surrounded by limits, as in a room. When we say a person is in a room we mean that he is within or on the inside of the room. If we are looking for a man and are told that he is in the house or a house, we would expect to find him on the inside of or within the house. In ordinary parlance the word "in" means on the inside of or within.

According to Webster the word "in" is sometimes equivalent to "on." He uses this illustration: "This use of the word is frequent in the scriptures, as 'let fowls multiply in the earth.' This use is more frequent in Europe than in America. We generally use 'on' in all similar cases, and this is most correct."

The word "on," as generally used and understood, has an altogether different meaning. Webster says it means "being in contact with the surface or upper part of a thing and supported by it; placed or lying in contact with the surface; as, my book is on the table; the table stands on the floor; the house rests on its foundation; we lie on a bed or stand on the earth."

If we were told that an article was on a trunk we would not expect to find it in or

within the trunk, but on the top of it. These words "in" and "on," when used as prepositions, have well-understood meanings, and, as they are generally used and understood, "in" does not mean "on," nor does "on" mean "in."

▆ In interpreting statutes we must give to the words used the meaning which they are ordinarily understood to have, and, "when a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Civ. Code, art. 13.

The statute under consideration provides that sureties on bonds of this kind are bound "for the payment by the contractor and by all subcontractors for all material or supplies furnished for use *in* machines used in the construction * * * of * * * road." (Italics ours.)

▆▆ The words of this statute are plain. *In* machines does not mean *on* machines. "In," as here used, means on the inside of the machine and not on the outside of it. The learned judges of the Court of Appeal say that "The word 'in,' as used in the act, evidently has the same meaning as the word 'on'; otherwise the amending act would not accomplish what was evidently intended." But we repeat that the word "in" as it is generally understood does not mean "on," and therefore there is no room for speculation as to what the act means. It says what it means and means what it says. The Court of Appeal has departed from the letter of the law under the "pretext" of pursuing its spirit. When the expressions used in a legislative act are "dubious," we should consider the "reason and spirit of it" in order to ascertain its meaning. But this amendment contains no "dubious" expressions.

As fuel of some kind is necessary in the operation of all kinds of machines, and wheth-

er the fuel be coal, oil, or gasoline, it is literally used *in* or on the inside of the machine, and as certain oils are also necessary as lubricants, and as these are also used in or inside machines, it is clear that only such material and supplies were intended to be covered by the amendment.

If the lawmaker had intended that public contract bonds should cover labor and material used in the repair of machines, it would have been easy to find language to express that intent, and the reasonable presumption is that such language would have been used. But the language used in this act does not suggest or convey the idea that such was the legislative intent.

▆ Statutes of this kind are to be strictly construed and are not to be extended beyond their precise letter. Red River Const. Company v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752.

The act of 1918 provides that the contractor and the bondsmen shall assume the obligation of paying all bills for material furnished in the construction of the work. This court has consistently held that the bond given under that act covered only such material as was actually incorporated in the work. Red River Construction Company v. Pierce Petroleum Corporation, supra; Miller v. Bonner et al., 163 La. 332, 111 So. 776; Silver v. Harriss et al., 165 La. 83, 115 So. 376; State et al. v. Smith et al., 167 La. 301, 119 So. 56; Board of Levee Com'rs of Orleans Levee Dist. v. Hulse et al., 167 La. 896, 120 So. 589; Brooks et al. v. Byrd & Clopton, 168 La. 450, 122 So. 287; Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768; Colonial Creosoting Company v. Perry et al., 169 La. 90, 124 So. 182.

The purpose of the amendment under consideration was to protect those who furnish material and supplies for machines which

can be used but once and are consumed in the prosecution and furtherance of the particular work undertaken, and which do not survive the completion of the project.

It is the duty of the contractor to furnish at his own expense all equipment, such as tools, implements, and machinery necessary in the performance of the work undertaken. It was never intended that the surety should be. liable for the price of the contractor's plant or equipment. The machinery, implements, and tools used are the property of the contractor and are used over and over again and are carried from one work to another. They do not enter into the construction of the work or become part of it. They are appliances and facilities used in aid of the performance of the contract. It being the duty of the contractor to furnish at his own expense the plant and equipment necessary, it follows that it is also his duty to keep such plant and equipment in repair at his own expense. In the case at bar the contractor furnished his own trucks to haul the gravel and other material used in the work. These trucks needed repairs, and plaintiff was employed to make them. In connection with the repairs he furnished inner tubes, casings, brake drums, shafts, and the like. These became permanent parts of the trucks and were not necessarily consumed in the prosecution of this work. The material and parts thus used became the property of the contractor and were available for use on other contracts, in other words, they survived the contract.

These public contract bonds are written with reference to the particular project under contract and cannot be extended to cover equipment and things carried away from and used on another. It would be unjust and unreasonable to hold a surety responsible for the expense of supplying the contractor with equipment which could be used on other works. The imposition of such an obligation would result in hampering and impeding public works and improvements, because contractors, if such liabilities were imposed on sureties, might and probably would find it difficult to procure surety bonds.

The Legislature never intended that the obligation assumed by a surety on public contractor bonds should extend to and cover material and supplies of the character here involved. The act under consideration and other recent legislation clearly show the legislative intent. In 1924 the Legislature adopted Act No. 203, "to protect Persons, Firms, or Corporations or Associations of Persons or Partnerships supplying or furnishing food for *use* and *consumption* by mules or other livestock used and employed by any Contractor or Subcontractor in the construction, erection, alteration or repair of Public Roads or Public Works of any character." (Italics ours.)

Manifestly the Legislature intended by this act to enable contractors and subcontractors to obtain credit for the food necessary to maintain the animals used in the construction of public works. Likewise, it was intended by the act of 1926 to enable them to obtain fuel and lubricants necessary to operate the machines, the machines taking the place of the animals. To give to the statute any other construction would be to supply terms not found in the act, and such is not the function of courts.

This interpretation of the act is in exact accord with the jurisprudence, not only of this state, but also with that of other states. The laws of Oregon with reference to contracts for the building of state highways are almost identical with ours. The Supreme

Court of that state in a most exhaustive and illuminating opinion in the case of Fitzgerald v. Neal, 113 Or. 103, 231 P. 645, 650, said:

"The materials furnished by plaintiff were used by him in replacing and repairing parts of an automobile, trucks, and machinery, and when the repairs were made these materials became a permanent part of the things repaired. The things thus repaired were not consumed in the construction of the highway nor did they become a component part of it. The automobile, trucks, and machinery, although used by the subcontractors in doing the work they had contracted to perform, survived the performance of the contract, and remained the property of the subcontractors and were available for use by them upon other contracts. * * *

"All of the authorities seem to agree that the surety of a contractor is not liable in an action on the bond for the purchase price or the repair of tools, mechanical appliances or instrumentalities forming a part of a contractor's or subcontractor's plant which, while used in the doing of the work, survive its performance and remain the property of their owner and after the completion of the contract retain their identity and fitness for future use."

See, also, Montgomery v. Southern Surety Company (Ind. App.) 162 N. E. 31; Piper-Howe Lumber Co. v. Padgett, 55 N. D. 811, 215 N. W. 468; National Surety Co. v. United States (C. C. A.) 228 F. 577, L. R. A. 1917A, 336; City of Alpena v. Title Guaranty & Surety Co., 159 Mich. 329, 123 N. W. 1126; United States Fidelity & Guaranty Company v. Yazoo County, 145 Miss. 378, 110 So. 780; Southern Surety Co. v. National Lumber Company, 73 Ind. App. 592, 122 N. E. 686; United States Fidelity & Guaranty Company v. Construction Co., 21 Ariz. 172, 186 P. 502.

For the reasons assigned it is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal and that of the city court of Bogalusa, in so far as they apply to the Union Indemnity Company, surety on the contractors' bond, be and they are hereby reversed and set aside, and further ordered that plaintiff's demand against said surety company be rejected and his suit against it dismissed, the costs of appeal to be paid by plaintiff.