McBRIDE, Judge.
The plaintiffs, Carl Liller and Barney H. Smith, lessees of the premises 3340 Canal Street, are partners in a venture, the obj ect of which is to establish and operate on the premises a business euphemistically known as a cocktail lounge, a place where liquor is sold at retail to patrons of the establishment and consumed by them on the premises.
The Louisiana Board of Alcoholic Beverage Control, which is the defendant, granted Liller and Smith a temporary or probationary permit for the last half of the year 1951, permitting them to operate said business on the premises. The licensees applied to the Board for a 1952 permit; before the probationary period had expired, and before the issuance of the 1952 permit, a Reverend Peyton, pastor of the Sacred Heart Church, located at 139 South Lopez Street, lodged a formal protest with the Board against the issuance of the 1952 permit, on the ground that the issuance of a permit for the operation of a cocktail lounge at 3340 Canal Street would be violative of Ordinance No. 16,221, C.C.S., of the City of New Orleans, in that the said premises faces a dedicated municipal playground.
Following a formal hearing on Reverend Peyton’s pretest, the Board concluded that the operation of the contemplated business ■by plaintiff at said location would violate the provisions of the city ordinance relied upon by the protestant, and the 1952 permit was accordingly denied plaintiffs.
This litigation originated in the Civil District Court for the Parish of Orleans, on the appeal of Liller and Smith from the decision of the Board. In their petition, they pray for judgment in their favor reversing the holding of the Board and ordering the issuance of the permit. The plaintiffs further pray that certain sections of the Alcoholic Beverage Control Law, LSA-R.S. 26:1 et seq., be declared unconstitutional, and that they be granted'certain in-junctive relief. The City of New Orleans intervened and joined with the Board in defending the suit; the Mothers’ Club of Sacred Heart School appeared as amicus curiae.
After a trial ‘below, there was judgment decreeing that the order of the Louisiana Board of Alcoholic Beverage Control, dated December 20, 1951, denying the applications of Carl Liller and Barney H. Smith for class “A” retail liquor permits for the years 1951 and 1952, to sell alcoholic beverages at retail on the premises 3340 Canal Street, be annulled and reversed, and the Board was commanded to issue immediately to the plaintiffs a class “A” retail liquor permit for the year 1952. The Board and the City of New Orleans have appealed suspensively from the judgment.
In the course of his reasons for judgment, the trial judge held that certain provisions of the Alcoholic Beverage Control Law, denying or limiting the right of the district courts to enjoin the actions of the Board, are violative of Art. 1, § 2 and § 6, and Art. VII, § 2, of the Constitution of Louisiana. However, as no injunction was issued by the trial court, and the judgment merely adjudicates the right of plaintiffs to a retail liquor permit for the year 1952, there is no need of our making any further allusion to the remarks of the trial judge in his written reasons pertaining to the unconstitutionality of those provisions of the Alcoholic Beverage Control Law dealing with the right of the court to issue injunctive process against the Board. We are concerned only with the question of the issuance vel non of a permit to the plaintiffs.
To a full understanding of the issues of the case, the locus in quo should be described. Canal Street, a boulevard running from the Mississippi River towards the lake, is intersected at right angles by what was originally known as Hagan Avenue (since 1927 designated as Jefferson Davis Memorial Parkway). There is a neutral ground in the center of Canal Street, upon which are located trolley car tracks, and this neutral ground separates two paved lanes upon which travels vehicular traffic Jefferson Davis Memorial Parkway is a *224 thoroughfare, probably the widest in New Orleans, which crosses Canal Street and runs in an uptown-downtown direction, in the center of which is a neutral ground of considerable width. That portion of Jefferson Davis Memorial Parkway running downtown from Canal Street is known as North Jefferson Davis Memorial Parkway, while that portion thereof which runs from Canal Street towards uptown is known as South Jefferson Davis Memorial Parkway.
In the year 1923, by Ordinance No.7383, C.'C.S., the Commission Council of the City of New Orleans dedicated the neutral ground on then North Plagan Avenue (now North Jefferson Davis Memorial Parkway), between Canal and Conti Streets, for public playground purposes. The neutral ground on South Jefferson Davis Memorial Parkway from Canal Street toward uptown has never been so dedicated.
The premises 3340 Canal Street occupy the uptown-river corner of the intersection formed by Canal Street and South Jefferson Davis Memorial Parkway. A drugstore was formerly operated at the location, and the intention of the plaintiffs is to convert the property into a cocktail lounge. The front door of the premises during its days as a drugstore was on a diagonal line at the corner, but the plans of conversion to a cocktail lounge contemplate the removal of the front door from, its diagonal position to a place on Canal Street about five feet from the corner. It will be seen, therefore, the property has a side 'line on South Jefferson Davis Memorial Parkway, and that the front of the building on Canal Street is directly opposite the downtown-river corner of the intersection.
Section 1 of Ordinance No-. 16,221, C.C. S., adopted by the ‘Commission Council of the City of New Orleans on May 9, 1945, as amended by Ordinance No. 16,425, C.C.S., adopted March 25, 1946, provides:
“Section 1. Be it ordained by the commission council of the City of New Orleans, That in all those portions of the City of New Orleans, not already the subject of regulations for the sale and distribution of intoxicating liquors and alcoholic beverages, by the provisions of Ordinances Nos. 14,-464 C.C.S., approved September 30, 1936 and 15,314 C.C.S., approved June 2, 1941 from and after the passage of this Ordinance, it shall be unlawful for any person, firm, corporation or association of persons, to set up or establish in any portion of the 'City of New Orleans, not already the subject of regulation by provisions of the aforesaid ordinances, any bar, barroom, night club, dance hall, beer house, music hall or theatre, court yard, cabaret, restaurant, wine house, dub house, store, resort, or other similar place, either public or private, where intoxicating liquors, wines or beers other alcoholic beverages are sold for consumption on the premises, or given away for consumption on the premises, or permitted to be consumed on the premises within three hundred feet (300') walking distance of any church, convent or school, except upon the written consent of not less than seventy (70%) per cent of the owners of real property, situated within three hundred feet (300') walking distance of any such church, convent or school, provided that no permit for the opening of any barroom, saloon, cabarets or other place where liquors are sold at retail, to be consumed on the premises, facing any public playgrounds in the City of New Orleans, shall be granted.”
The reason assigned .by the Louisiana Board of Alcoholic Beverage Control for its refusal to issue the permit is that the Board believed that the spirit of the above quoted ordinance is to prohibit the establishment of a place which dispenses alcoholic beverages at retail immediately next to or near a public playground, and that “to quibble about the meaning of the word ‘face’ simply constitutes a play on words.”
There is no question that the Board should decline to issue a permit in contravention of a local ordinance which prohibits the conduct of an alcoholic beverage business within a certain distance of a playground. LSA-R.S. 26:80, subd. C provides in part:
*225 “■Governing authorities of parishes and municipalities may enact ordinances to prohibit the conduct of alcoholic beverage businesses within a certain distance of a parish or municipal public playground or of a building used exclusively as a regular church or synagogue, public library, or school, except a school for business education ■conducted as a business college. No state or local permit shall be issued in contravention of any such ordinance.
“In municipalities the prohibition may not extend more than three hundred feet from the church, synagogue, library, school, or playground. The measurement of this distance shall be made as a person walks using the middle of the sidewalk from the nearest point of the property line of the church, synagogue, library, playground, or school to the nearest point of the premises to be licensed.”
We agree with the trial judge that the sole question in this case is whether 3340 Canal Street can be said to be facing the playground site established by the Commission Council on the neutral ground area of North Jefferson Davis Memorial Parkway between Canal and Conti Streets.
In his reasons for judgment, the court below observed:
“The answer is so clear to my mind as not to permit of any argument. Every building 1ms a ‘front’, a ‘back’ or ‘rear’ and two sides. This building bears the municipal number 3340 Canal Street, and was meant to ‘front’ on Canal Street, and the building actually does front on Canal Street. To my mind the building ‘faces’ what its front opposes. To be more explicit, the building ‘faces’ that which is both opposite its front and included within a projection of the side lines of the building.
* * * * * *
“If this be true, the 'building in question here does not ‘face’ the playground. It ‘faces’ the building on the other side of Canal Street opposite its front.
“It is said that the ordinance should be interpreted so as to give' effect to its intent to prevent barrooms from being established near to or in the vicinity of playgrounds. This Court must take the ordinance as it exists. It prevents only the establishment of a barroom in a place ‘facing’ a playground. * * * ”
The playground in question is about ISO feet removed from the building in which plaintiffs intend to operate their cocktail lounge, and it is conceded that the establishment will be visible to those who make use of the playground, and that there are no intervening obstructions between the two locations.
Counsel for the appellants and the amicus curiae argue that, whereas the ordinance deals with the trafficking in intoxicating liquors, we are warranted in seeking the reason and spirit for its adoption, and in giving to it a liberal construction. They say that undoubtedly the framers of the ordinance considered that the word facing was broad enough to apply to an establishment handling intoxicating liquors which might even be situated at an oblique angle from a playground. To give to the ordinance the meaning contended for would require an utter disregard of the well defined rules for construing laws.
In interpreting a statute or ordinance, the court must give to the words used the meaning which they are ordinarily understood to have, and when a law is clear and free from all ambiguity, the letter of it must not be disregarded under the pretext of pursuing its spirit. R.C.C. art. 13. When the expressions used are dubious, then the reason and spirit of the enactment should be considered, otherwise not. Rester v. Moody & Stewart, 172 La. 510, 134 So. 690.
Under the provisions of the ordinance in question, none of the enumerated establishments may be conducted within a pro*-hibited area, except upon the written consent of at least seventy per cent of the owners of real estate within 300 feet walking distance of the church, convent, or school, but in no event shall a permit be *226 issued where the establishment faces a public playground. This meaning is plain.
The word facing cannot ibe said to apply to a building on an oblique angle from, but not directly facing, a playground. If the Commission Council had any intention of prohibiting an establishment not directly facing a playground, but located within near proximity 'thereto, from handling liquor, the ordinance would have said so in plain language.
The words of a law are generally to be understood in their most usual signification. R.C.C. art. 14. According to Webster’s New International Dictionary, second edition, one of the meanings of the word face is:
“To stand opposite to; to stand with the face or front toward; to front upon.”
This illustration follows the definition:
“The apartments faced the park.”
We agree with the findings of the trial judge. 'Considering all of the circumstances of the case, our opinion is that the defendant Board had not the right to deny to the plaintiffs the applied for permit on the ground assigned. Tire fact that there are two1 churches with schools within 350 feet of the proposed cocktail lounge docs not alter the -situation.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.