SUSAN M. CHEHARDY, Chief Judge.
| ¡.This appeal stems from a suit by the subcontractor, Pierce Foundations, Inc. (“Pierce”), against the general contrac *582 tor, JaRoy Construction, Inc. (“JaRoy”), and its statutory bond surety, Ohio Casualty Insurance Co. (“Ohio Casualty”) for monies owed under the subcontract. Appellant/second appellee, Ohio Casualty, appeals from a judgment of liability to appellee/second appellant, Pierce, for mo--nies under the subcontract. Pierce appeals seeking modification of the date on which interest began to accrue on the judgment. For the reasons that follow, we reverse the judgment of the trial court and render judgment in favor of Ohio Casualty.

FACTS AND PROCEDURAL HISTORY

In the spring of 2008, Jefferson Parish contracted with JaRoy to construct a public works project, the gymnasium at Terry-town Playground in Terrytown, Louisiana, for the amount of $4,685,307.00. JaRoy furnished to Jefferson Parish the performance and payment bonds required by La. R.S. 38:2241(B). Ohio Casualty was the surety on the bonds.
On June 3, 2008, JaRoy entered into a written subcontract with Pierce to provide and install pilings for the construction of the gymnasium. This contract | aspecifically provided that Pierce would “furnish all labor, materials, installation and equipment per plans, specifications and addendums for all piles and driving of piles.” The contract called for Pierce to drive 615 foundation piles at a cost of $359,987.00 and 6 test piles at a cost of $11,500.00, for a total cost of $371,487.00.
Pierce drove the test piles bn July 30, 2008 and commenced driving the foundation piles on or about August 28, 2008. On November 3, 2008, Pierce completed driving all 621 pilings as called for in the contract. .
Pierce remained unpaid, and on July 23, 2009, filed suit against JaRoy seeking to recover $116,716.96, plus interest, attorney fees, and costs. On July 22, 2010, Pierce amended its petition to add Ohio Casualty as a defendant, alleging that, as the surety of JaRoy under a construction bond, it guaranteed the performance of JaRoy under the contract and therefore was jointly and severally liable.
On December 17, 2010, JaRoy filed a petition for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Louisiana. Following total completion of the project, Jefferson Parish filed a notice of acceptance of the work in the clerk of court’s office on October 17, 2011.
The matter proceeded to a two-day bench trial on November 13 and 14, 2012. On December 13, 2012, the trial court rendered judgment in favor of Pierce against Ohio Casualty in the amounts of $59,428.96 for monies owed under the contract and $57,000.00 for idle time, plus judicial interest from November 14, 2012 until paid.
Following several motions for new trial, amended judgments, and a premature appeal that this Court dismissed and remanded for lack of jurisdiction,[1] the trial court, on remand on May 19, 2014, with all its previous judgments 14vacated, rendered judgment in favor of Pierce against Ohio Casualty in the amounts of $59,428.96 for payment under the contract and $57,000.00 for idle time, plus judicial interest from the date of the original judgment, December 13, 2012, until paid.
On June 26, 2014, the trial court granted Ohio Casualty a suspensive appeal from the court’s May 19, 2014 judgment; and, *583 on July 17, 2014, the court granted Pierce a devolutive appeal.

ISSUES ON APPEAL

On appeal, Ohio Casualty raises two assignments of error: (1) the trial court erred in denying Ohio Casualty’s motion for summary judgment; and (2) the trial court erred in awarding damages for delay and contract damages and/or unjust enrichment to Pierce. Pierce argues that the trial court erred by awarding interest from the date of judgment.

DISCUSSION

In Ohio Casualty’s first assignment of error, Ohio Casualty argues that Pierce’s failure to comply with certain provisions of the Louisiana Public Works Act, La. R.S. 38:2241, et seq., was fatal to Pierce’s right of action against Ohio Casualty and that the trial court erred in denying its motion for summary judgment.
In Ohio Casualty’s motion for summary judgment filed on September 7, 2012, Ohio Casualty argued that Pierce’s failure to comply with the notice and recordation requirements of La. R.S. 38:2242(B) was fatal to Pierce’s right of action against Ohio Casualty. After a hearing on October 4, 2012, the trial court rendered judgment on October 11, 2012, granting the motion in part, finding there was no privilege in favor of Pierce and permitting the suit to proceed “as to all other claims and causes of action asserted by Pierce.” Ohio Casualty sought supervisory review with this Court. On November 9, 2012, this Court denied | ¡¿relief, declining to exercise our supervisory jurisdiction on the showing made. See Pierce Founds, v. JaRoy Constr., Inc., 12-859 (La.App. 5 Cir. 11/9/12) (unpublished writ disposition).
On appeal, Pierce argues that this Court is precluded from considering Ohio Casualty’s first assignment of error pursuant to the law of the case doctrine since this Court previously considered this issue in Ohio Casualty’s writ application. In declining to exercise our supervisory jurisdiction on Ohio Casualty’s writ application, this Court did not address the issue on its merits. Therefore, we decline to apply the law of the case and will consider Ohio Casualty’s argument here on appeal. See Eastin v. Entergy Corp., 07-212 (La.App. 5 Cir. 10/16/07), 971 So.2d 374, 379, writ denied, 07-2214 (La.1/11/08), 972 So.2d 1167.
Public contract law provides that when the representative of a governing authority enters into a contract for construction of a public work, a bond must be provided. Wilkin v. Dev. Con Builders, Inc., 561 So.2d 66, 71 (La.1990). Indeed, La. R.S. 38:2241(B) mandates that whenever a public entity enters into a contract in excess of $25,000.00 for the construction, alteration, or repair of any public works,
... the public entity shall require of the contractor a bond with good, solvent, and sufficient surety in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242. The bond furnished shall be a statutory bond and no modification, omissions, additions in or to the terms of the contract, in the plans or specifications, or in the manner and mode of payment shall in any manner diminish, enlarge, or otherwise modify the obligations of the bond. The bond shall be executed by the contractor with surety or sureties approved by the public entity and shall be recorded with the contract in the office of the recorder of mortgages in the parish where the work is to be done not later than thirty days after the work has begun.
The instant case concerns La. R.S. 38:2242(B) and La. R.S. 38:2247.
La. R.S. 38:2242(B) provides:
*584 |fiAny claimant[2] may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
La. R.S. 38:2247 provides in pertinent part:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor....
Our interpretation of these statutes begins with the statutory language itself. See Oubre v. La. Citizens Fair Plan, 11-0097 (La.12/16/11), 79 So.3d 987, 997, cert. denied, — U.S. -, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). But before turning to this language, we first recognize that these statutes, as components of the Louisiana Public Works Act, are stricti juris and must be construed strictly. The Louisiana Supreme Court has recognized the long standing principle of statutory interpretation that, as a general rule, lien statutes are stricti juris and should thus be strictly construed. State v. Mclnnis Bros. Constr., 97-0742 (La.10/21/97), 701 So.2d 937, 944 (citing Guichard Drilling Co. v. Alpine Energy Servs., 94-1275 (La.7/3/95), 657 So.2d 1307, 1313). Public contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes. Id. (citing Wilkin v. Dev. Con Builders, Inc., 561 So.2d 66, 71 (La.1990); American Creosote Works, Inc. v. Natchitoches, 182 La. 641, 162 So. 206 (La.1935); Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931)). The Public Works Act is to be strictly construed and the liability of the surety should not be expanded beyond the statute. Id. The obligations of a statutory bond are limited to the exact |7provisions of the statute. Id Moreover, the Public Works Act is sui generis and provides exclusive remedies to parties in public construction work. Id.
With the foregoing in mind, we turn to the pertinent language of La. R.S. 38:2247: “Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and. who has complied-with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond.... ” Construing this language strictly, we find that only those claimants who have complied with the notice and recordation requirements of La. R.S. 38:2242(B) shall not be deprived of a right of action on the bond. Logic therefore dictates that the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions for a right of action on a bond. The failure to comply with these requirements deprives a claimant of a right of action on a bond.
We find support for this interpretation in jurisprudence out of the Louisiana First Circuit which has consistently held that a claimant must comply with the notice and recordation requirements of La. R.S. 38:2242(B) in order to maintain its right of *585 action on a bond; See Gulf Coast Refrigeration, LLC v. Houma Terrebonne Hous. Auth., 13-1512 (La.App. 1 Cir. 3/24/14), 2014 WL 1175898, *7 (unpublished), writ denied, 14-0855 (La.6/20/14), 141 So.3d 811 (affirming the trial court’s grant of the public authority’s and surety’s exceptions of no right of action and no cause of action on the basis that the subcontractor failed to comply with La. R.S. 38:2242(B) when he filed his sworn statement more than 45 days after the contractor went into default); John F. Sanchez Plumbing Co. v. Aetna Casualty & Surety Co., 564 So.2d 1302, 1303 (La.App. 1 Cir.1990), writ denied, 567 So.2d 1128 (La.1990) (holding that the subcontractor did not have a cause of action against the surety because he failed to comply with La. R.S. 38:2242(13) when he filed his sworn statement more than 45 days after recordation of the notice |Rof acceptance); Interstate School Supply Co. v. Guitreau’s Constr. & Consulting Co., 542 So.2d 138, 139 (La.App. 1 Cir.1989) (affirming the trial court’s grant of the surety’s exception of no right of action on the basis that the subcontractor failed to comply with La. R.S. 38:2242(B) when he filed his sworn statement 46 days after recordation of the notice of acceptance).
We also find support in the legislative history of La. R.S. 38:2247. Prior to 1985, La. R.S. 38:2247 provided in pertinent part: “Nothing in this Part shall be construed to deprive any person or claimant ... of his right of action on the contractor’s bond.... ” Based on this language, the Louisiana Supreme Court held that “an unpaid subcontractor having a direct contractual relationship with the contractor may sue on the contractor’s bond without filing and recording a sworn claim or giving written notice to the contractor.” Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145, 148 (La.1985).
Following this ruling, in Acts 1985, No. 244, § 1, the Legislature amended La. R.S. 38:2247 such that it now provides: “Nothing in this Part shall be construed to deprive any claimant ... who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond.... ” (Emphasis added). The First Circuit commented on the consequence of this amendment: “Where compliance with the notice requirements had not been necessary in order to proceed on the bond, the amendment specifically requires compliance with the notice requirements in order to do so.” Interstate School Supply Co., supra.
In support of its contrary position, Pierce relies on the Fourth Circuit decision, “K” Constr. v. Burko Constr., 93-1338 (La.App. 4 Cir. 12/16/93), 629 So.2d 1370, writ denied, 94-0149 (La.3/11/94), 634 So.2d 391, in which that court |rejected the notion that La. R.S. 38:2247 and 38:2242(B) establish necessary conditions for a right of action on a bond.
In Burko, when an outstanding balance under a subcontract remained unpaid, the subcontractor sent certified letters of its claim to the public authority, to the general contractor, and to the two sureties on the project, and filed a sworn affidavit of the outstanding balance with the recorder of mortgages. Id. at 1371. Thereafter, the subcontractor filed suit against the general contractor and the two sureties seeking to recover the outstanding balance under the subcontract. Id. The contractor was then put in default, notice of which was recorded. Id. The suit proceeded, and after a trial on the merits, the trial court ruled in favor of the subcontractor against the two sureties and the general contractor, in solido. Id. The sureties appealed, arguing that pursuant to La. R.S. 38:2247 and 38:2242(B), in order for a subcontractor-claimant to pursue a surety, the sub *586 contractor must “file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.” Id. The sureties alleged that these requirements had not been complied with since the subcontractor had failed to, within 45 days of notice of default of the contractor, file a sworn statement of the amount owed with the public authority. Id. at 1372.
The .Fourth Circuit rejected this argument, holding that La. R.S. 38:2247’s reference to the notice and recordation requirements of La. R.S. 38:2242(B) does not establish prerequisites for a cause of action on a bond. Burko, supra. The court also found that the sureties’ argument was “irrelevant” since the subcontractor filed suit before the contractor was put in default, “which is' the event which triggers the 45-day period during which a claimant may file and record his sworn statement under La. R.S. 38:2242....” Id. at 1374. Finding that the | ^Louisiana Public Works Act “does not appear to envision a situation where suit is filed before the notice of default is recorded!,]” the court sought to determine if the claimant’s actions constituted sufficient notice. Id. The court concluded that notice was sufficient due to the subcontractor’s certified letters to the public authority and the contractor, and the recordation of a sworn statement of its claim in the mortgage records. Id. In reaching this conclusion, the court found that it was “not reasonable to penalize a subcontractor who has given timely notice sufficient to apprise the governing authority of its claim, merely omitting to provide the governing authority with a sworn statement.” Id. at 1373 (Emphasis original).
By declining to require the subcontractor to file a sworn statement of his claim with the governing authority, as expressly provided in La. R.S. 38:2242(B) and mandated by La. R.S. 38:2247, it is apparent that the Burko court did not strictly construe the Public Works Act. We disagree with this approach and are compelled to construe these statutes strictly, as directed by the Louisiana Supreme Court. See Mclnnis Bros. Constr., supra. Moreover, the instant case is factually distinguishable from Burko. In Burko, the subcontractor filed a sworn statement of the outstanding balance with the recorder of mortgages, but did not file a sworn statement with the public authority. Whereas, in the instant case, Pierce neither filed a sworn statement of the outstanding balance with the public authority nor recorded any such sworn statement with the recorder of mortgages. Pierce’s failure to comply with the plain language of La. R.S. 38:2247 and La. R.S. 38:2242(B) deprived it of a right of action on the bond.
We therefore conclude that the trial court erred in rendering judgment in favor of Pierce and against Ohio Casualty.
Inin reaching this conclusion, we find that Ohio Casualty was entitled to summary judgment at the time of its motion on September 7, 2012. However, given the current procedural posture of the case, where a full trial on the merits has been conducted, we decline to render summary judgment at this stage of the proceedings.

DECREE

For the foregoing reasons, the judgment of the trial court in favor of Pierce is reversed. Judgment is rendered in favor of Ohio Casualty, and Pierce’s action against Ohio Casualty is dismissed with prejudice. Costs are assessed against Pierce.

REVERSED AND RENDERED

. See Pierce Founds, v. JaRoy Constr., Inc., 13-529 (La.App. 5 Cir. 12/19/13), 131 So.3d 1019.

. La. R.S. 38:2242(A) defines "claimant” as "any person to whom money is due pursuant to the contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction ... of any public works.... ”