# Supreme Court of Louisiana

The Opinions handed down on the **3rd day of May, 2016**, are as follows:

**BY CRICHTON, J.**:

2015-C -0785        PIERCE FOUNDATIONS, INC. v. JAROY CONSTRUCTION, INC. (Parish of Jefferson)

Pursuant to the foregoing, we hold that Pierce's lawsuit was timely filed against the general contractor and its surety, Ohio Casualty, and that the failure of the plaintiff to perfect its privilege against the public authority (as found by the trial court) does not defeat its right of action against the surety. The decision of the court of appeal is reversed and the decision of the trial court is reinstated.
REVERSED.

KNOLL, J., dissents and assigns reasons.
GUIDRY, J., dissents and assigns reasons.
HUGHES, J., dissents for the reasons assigned by Guidry, J., and assigns additional reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-0785

## PIERCE FOUNDATIONS, INC.

### VERSUS

## JAROY CONSTRUCTION, INC.

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIFTH CIRCUIT, PARISH OF JEFFERSON

**CRICHTON, Justice.**

This case involves the interpretation of two provisions of the Public Works Act ("Act"), La. R.S. 38:2241, *et seq.* We granted the writ application to determine whether, under La. R.S. 38:2247, the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions for a claimant's right of action against a bond furnished pursuant to La. R.S. 38:2241. Consistent with the stated purpose of the Act, we hold that the claimant's failure to file a sworn statement with the public authority did not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety. We therefore reverse the decision of the court of appeal and reinstate the decision of the trial court.

## BACKGROUND

This matter arises out of a public works project for the construction of a gymnasium in Terrytown, Louisiana. Pursuant to a contract between JaRoy Construction Inc. ("JaRoy" or "contractor") and Jefferson Parish Council ("Jefferson Parish"), JaRoy was to serve as the general contractor. In compliance with La. R.S. 38:2241, *et seq.*, the contractor furnished to Jefferson Parish a bond, on which the Ohio Casualty Insurance Company ("Ohio Casualty") was the surety.

JaRoy thereafter entered into a written subcontract with Pierce Foundations,

Inc. ("Pierce") to provide and install pilings on the project. On November 3, 2008, Pierce completed the pile driving as called for in the contract. The contractor failed to pay to Pierce certain funds Pierce contended were due under the contract.[1]

In July 2009, Pierce filed a "Petition for Damages in Contract" against the contractor, and, in July 2010, amended the petition to add Ohio Casualty as a defendant. Pierce alleged that Ohio Casualty and the contractor were "jointly and severally liable" to Pierce for the failure of the contractor to perform under the contract. Ohio Casualty asserted several affirmative defenses to these allegations, one of which was that Pierce failed to comply with conditions precedent to filing a claim against the surety. When the contractor filed a petition for bankruptcy protection in December 2010, the lawsuit proceeded solely against Ohio Casualty.

On October 17, 2011, when the project was substantially completed, the Jefferson Parish government filed a notice of acceptance of work with the Jefferson Parish mortgage records office. This occurred over a year after Pierce amended its lawsuit to add Ohio Casualty as a defendant. It is undisputed that Pierce never filed a sworn statement of claim in the mortgage records.

Before trial, Ohio Casualty filed a motion for summary judgment, contending that Pierce was required to comply with the notice and recordation requirements of La. R.S. 38:2242(B) and, because it failed to do so within 45 days of Jefferson Parish's acceptance of the project, Pierce could not recover from Ohio Casualty under La. R.S. 38:2247. Pierce opposed the motion, asserting that the statute does not affect the right to proceed in contract, and the Act never contemplated a situation in which notice would be given and suit filed before the events outlined in R.S. 38:2242. Pierce contended that the Act does not contemplate any loss of rights, other than the privilege against the public entity.

---

[1] Pierce alleged that the contractual base price was $359,987.00, to which was added $11,500.00 for a test pile program and $60,512.00 for standby/delay time, totaling $431,999.00. The balance due, according to Pierce, is $116,716.96.

The trial court granted Ohio Casualty's motion in part, "only to the extent that there is no privilege in favor of [Pierce]," and otherwise permitted the suit to proceed. Ohio Casualty sought supervisory review, and the court of appeal denied relief, stating:

> On the showing made, we decline to exercise our supervisory jurisdiction. *K Construction, Inc. v. Burko Construction, Inc.*, 629 So. 2d 1370 (La. App. 4 Cir. 1993); *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66 (La. 1990).

*Pierce Founds., Inc. v. The Ohio Casualty Ins. Co.*, 12-0859 (La. App. 5 Cir. 11/09/12) (unpublished).

On December 13, 2012, after a bench trial, the trial court rendered judgment in favor of Pierce in the amounts of $59,428.96 for sums owed under the contract and $57,000.00 for idle time, plus judicial interest from the date of the original judgment. As to Ohio Casualty's argument that Pierce's exclusive right of action against it was limited to the relief granted by the Act and subject to compliance with its requirements, the trial court noted that it had "already rejected" this defense and stated that there was "no reason for this court to revisit that issue." Following several motions for a new trial and amended judgments, the final judgment was signed on May 19, 2014.

Ohio Casualty suspensively appealed the judgment, contending that the trial court erred in failing to dismiss it prior to trial, because Pierce's failure to comply with the notice provisions of La. R.S. 38:2242(B) resulted in forfeiture of its right of action against the surety. Pierce devolutively appealed, asserting the trial court erred by awarding interest only from the date of judgment. The Court of Appeal, Fifth Circuit, concluded that Pierce's failure to comply with the relevant notice provisions deprived it of a right of action against Ohio Casualty, reversed the trial court judgment, and dismissed the suit as to Ohio Casualty. *Pierce Founds., Inc. v. JaRoy Constr., Inc.*, 14-669 (La. App. 5 Cir. 3/25/15), 169 So. 3d 580.

We then granted Pierce's application for a writ of certiorari. *Pierce Founds., Inc. v. JaRoy Constr., Inc.*, 15-0785 (La. 6/5/15), 171 So. 3d 938.

**RELEVANT LAW**

In 1918, the legislature enacted Act 224, the precursor to the modern Public Works Act, La. R.S. 38:2241, *et seq.*, to "protect those performing labor and furnishing materials for public works." *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66, 70 (La. 1990). The laws do not grant beneficiaries a lien on the public work itself, but rather gives them "a privilege against the unexpended fund in the possession of the public entity with whom the original contract was entered into." *Id.* (quoting *Pigeon-Thomas Iron Co. v. Drew Bros.*, 111 So. 182, 183 (1926)). As this Court stated:

> The effect of these provisions is to give certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself.

*Id.* at 70. The laws also protect a public authority complying with the requirements of the statute from expenses caused by the failure of the contractor to perform the contract. 561 So. 2d at 71.

The statutory framework set forth in the Act accomplishes this purpose, first, by mandating that, when a public entity enters into a contract in excess of $25,000.00 for the construction, alteration, or repair of any public works, the contractor is required to post a bond "in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242." La. R.S. 38:2241(A)(2). The law further establishes a means for asserting a claim under the Act, set forth in La. R.S. 38:2242(B):

> Any claimant[2] may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the

---

[2] La. R.S. 38:2242(A) defines "claimant" as "any person to whom money is due pursuant to the contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction. . . of any public works. . . ." No party

4

governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.

The Act also addresses a claimant's direct right of action on the bond against the general contractor and/or surety, making clear that the subcontractor maintains a separate right of action outside of the parameters of the Act. To that end, La. R.S. 38:2247 provides, in pertinent part:

> Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed.

The court of appeal, construing La. R.S. 38:2247, held that "only those claimants *who have complied* with the notice and recordation requirements of La. R.S. 38:2242(B) *shall not be deprived* of a right of action on the bond." *Pierce Founds., Inc. v. JaRoy Constr., Inc.*, 14-669, p.7 (La. App. 5 Cir. 3/25/15), 169 So. 3d 580, 585 (emphasis added). The court of appeal therefore concluded: "[T]he notice and recordation requirements of La. R.S. 38:2242(B) are *necessary conditions* for a right of action on a bond. *The failure to comply with these requirements deprives a claimant of a right of action on a bond*." *Id.* (emphasis added). The court of appeal also rejected the reasoning of the case *"K" Construction, Inc. v. Burko Construction, Inc.*, 629 So. 2d 1370 (La. App. 4 Cir.

disputes that Pierce would qualify as a "claimant" under this definition.

5

1993), which it had previously cited in denying the relief that Ohio Casualty sought pre-trial.

Ohio Casualty urges this Court to affirm the court of appeal, arguing that Pierce's failure to file the sworn statement of claim is fatal to its cause of action against Ohio Casualty. Ohio Casualty argues that exclusive rights of action against the surety are set forth in La. R.S. 38:2247, and Pierce's failure to comply with the requirements of the Act – including the notice and recordation requirements of La. R.S. 38:2242(B) – bar recovery against Ohio Casualty.

Pierce argues that the court of appeal decision frustrates the purpose of the Act – specifically, that the Act was adopted to protect those performing labor and furnishing materials for public works, as set forth in *Wilkin*, not to immunize sureties from lawsuits brought in contract related to unpaid funds. Pierce contends, *inter alia*, that the court of appeal erred by converting the permissive "may" of La. R.S. 38:2242(B) into a mandatory requirement, thereby holding that a claimant who does not file the sworn statement is "deprived of all rights against the surety" – including rights in contract. Additionally, because Pierce filed suit over a year before Jefferson Parish filed the notice of acceptance, Ohio Casualty could not reasonably claim it did not have notice of the claim. For the reasons set forth below, we agree with Pierce.

## ANALYSIS

Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans,* 98-0601, p.15 (La. 10/20/98), 720 So. 2d 1186, 1198; *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n,* 09-0023, p.8 (La. 6/26/09), 17 So. 3d 350, 355-56. *See also* La. R.S. 24:177(B)(1). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in

search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. *See, e.g., Cat's Meow,* 98-0601, p.15, 720 So. 2d at 1198; *Timbermen,* 09-0023, p.8, 17 So. 3d at 356. Additionally, "all laws pertaining to the same subject matter must be interpreted in *pari materia*, or in reference to each other." *See, e.g., State v. Williams*, 10-1514 (La. 3/15/11), 60 So. 3d 1189, 1191; La. C.C. art. 13. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193, p.10 (La. 1/19/11), 56 So. 3d 181, 187-88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

Because this matter involves the interpretation of statutory provisions and only questions of law are presented, review by this court is de novo. *See, e.g., Red Stick Studio*, 56 So. 3d at 187. Additionally, because the case involves the Public Works Act, it must be strictly construed. *Wilkin*, 561 So. 2d at 75.

The court of appeal found that Ohio Casualty was entitled to summary judgment before trial, because Pierce did not comply with the notice and recordation requirements of La. R.S. 2242(B). In so holding, the court of appeal construed La. R.S. 38:2247 as imposing an affirmative requirement: "[O]nly those claimants who have complied with the notice and recordation requirements of La. R.S. 38:2242(B) shall not be deprived of a right of action on the bond." 14-669, p.7, 169 So. 3d at 584. Accordingly, the court of appeal concluded: "Logic . . . dictates that the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions for a right of action on a bond." *Id.* In other words, the court

7

of appeal found that R.S. 38:2247's reference to the "requirements" of 2242(B) causes the formalities to become mandatory in any action against the bond.[3]

We disagree with this holding, and find that where the subcontractor fails to comply with the notice and recordation requirements of La. R.S. 2242(B), the subcontractor loses his privilege against funds in the hands of the public authority, but the failure to comply does not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety. As an initial matter, we point out that the plain language of La. R.S. 38:2242(B) and La. R.S. 38:2247 conflict, because R.S. 38:2242(B) provides that a claimant "may" file a sworn statement, but R.S. 38:2247 refers to the recordation "requirements" of 2242(B). Because of this ambiguity, we pursue the statutory meaning in the context of the statute as a whole, with particular focus on the statute's purpose.

The fundamental error in the court of appeal's analysis is that it renders the permissive "may" in La. R.S. 38:2242(B) – "[a]ny claimant *may* . . . file a sworn statement" – mandatory in La. R.S. 38:2247. But the revised statutes instruct: "The word 'shall' is mandatory and the word 'may' is permissive." La. R.S. 1:3. The court of appeal's interpretation of the language of La. R.S. 38:2247 as mandatory, even where preexisting contractual rights exist, is inconsistent with the "cardinal rule of statutory interpretation that the word 'may' is permissive." *Kelly v. State Farm Fire & Cas. Co.*, 14-1921, p.12 (La. 5/5/15), 169 So. 3d 328, 336.

Instead of employing this interpretive principle, the court of appeal references the legislative history of La. R.S. 38:2247 to support its holding. Before 1985, La. R.S. 38:2247 provided, in pertinent part: "Nothing in this Part shall be

---

[3] The dissent authored by Justice Hughes, which concludes that the *only* avenue for asserting a claim against the surety for work performed pursuant to the Act is by means of the process set forth in the Act (including the concursus proceeding), would effect a sweeping change in the application of the Act. In effect, Justice Hughes reads out of the Act the direct right of action against the bond that is expressly recognized and preserved in La. R.S. 38:2247. Such a holding is not supported by the language or intent of the Act.

8

construed to deprive any person or claimant . . . of his right of action on the contractor's bond . . . ." 14-669, p.8, 169 So. 3d at 585. Then, in 1985 La. Acts 244, § 1, the legislature amended the provision to state: "Nothing in this Part shall be construed to deprive any claimant . . . *who has complied with the notice and recordation requirements of R.S. 38:2242(B)*, of his right of action on the bond . . . ." *Id*. (emphasis added). The court of appeal opinion implies that the amendment was intended to overrule *Honeywell, Inc. v. Jimmie B. Guinn, Inc.,* 462 So. 2d 145, 148 (La. 1985), in which this Court commented (in *dicta*) that "an unpaid subcontractor having a direct contractual relationship with the contractor may sue on the contractor's bond without filing and recording a sworn claim or giving written notice to the contractor." *Honeywell*, 462 So. 2d at 148.

However, an examination of 1985 La. Acts 244, § 1 does not support the court of appeal's assumption that the legislature intended to modify or otherwise limit La. R.S. 38:2242 in amending La. R.S. 38:2247. First, *Honeywell* stands only for the proposition that La. R.S. 38:2247 contains a prescriptive period governing the claims of subcontractors, as well as those of materialmen or laborers. 462 So. 2d at 148. Second, the amendment of La. R.S. 38:2247 was not the only change caused by 1985 La. Acts 244, § 1. The Act also revised La. R.S. 38:2241, 2242, 2244, and 2247, but, despite these changes, the legislature did not alter the use of the permissive "may" in La. R.S. 38:2242(B). If the legislature had intended La. R.S. 38:2247 to have the effect ascribed to it by the court of appeal, it would have altered the permissive "may" in La. R.S. 38:2242 to the mandatory "shall." *Compare, e.g.*, La. R.S. 48:256.5(B) ("Public Contracts of the Department of Transportation and Development," providing: "Any claimant *shall*, after the

maturity of his claim and within forty-five days after the recordation of final acceptance of the work by the [governing authority] ....") (emphasis added).[4]

Further, the court of appeal's interpretation of La. R.S. 38:2247 to essentially trump the permissive language in La. R.S. 38:2242(B) overlooks that La. R.S. 38:2247 is first and foremost a prescription provision, providing an additional year to parties filing suit *after* the acceptance of work or default notice is filed.[5] In this case, Pierce filed suit over a year before the acceptance was filed, the parties litigated the claims through discovery and motions, and Ohio Casualty was no doubt on notice of Pierce's suit. Requiring additional notice under these unique circumstances is futile and merely duplicative.

We acknowledge that La. R.S. 38:2242 and La. R.S. 38:2247 use confusing – even conflicting – language. But favoring the permissive ("may") language of La. R.S. 38:2242 rather than the restrictive ("requirements") language of La. R.S. 38:2247, as we do here, best comports with the purpose of the act, which is to "protect those performing labor and furnishing materials for public works" rather than protecting the sureties on the bond. *Wilkin*, 561 So. 2d at 70. In other words, the Act creates an *additional* remedy to persons contributing to the construction, alteration, or repair of public works – a "privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into." *Id*. The Act is not intended to – and does not – affect rights

---

[4] Though the court of appeal presumes that the amendment of La. R.S. 38:2247 was intended to overrule *Honeywell*, it is just as likely that the revisions were intended to overrule the decisions in *Construction Materials, Inc. v. Am. Fidelity Fire Ins. Co.*, 388 So. 2d 365 (La. 1980), and *Valliant v. State, Dept. of Transp. and Development*, 437 So. 2d 845 (La. 1983), which ruled that sureties could contractually extend their liability for claims falling outside the ambit of the public works statutes, and to make it clear that the bond furnished pursuant to the Act is a statutory one. Thus, under the 1985 amendments, sureties are "immune" from claims of those who do not qualify as "claimants" under the Act. *See* La. Prac. Series: La. Constr. Law § 13:10.

[5] Though we respectfully disagree with the dissent authored by Justice Knoll, which adopts a similar analysis to the court of appeal, we emphasize that the statutory provisions are complicated and, unfortunately, less than clear. Given the divergence in analysis by the courts below and even the justices on this court, we believe that this is a matter ripe for review by the Louisiana Law Institute and the legislature.

10

between parties proceeding directly in contract and is, in fact, silent on the question of parties that are in contract and, as here, file suit well before the notice of acceptance or default is filed. *See*, *e.g.*, James S. Holliday, *et al.*, La. Prac. Series: La. Constr. Law, § 13:14 (2015 ed.) ("[C]laimants have a direct right of action against the contractor and the surety on the bond. This action can be filed any time after maturity of the claim, rather than requiring that the claimants wait for forty-five days after acceptance of the entire project, which in many cases could occur long after the claim matures."). *See also*, *e.g.*, La. C.C. art. 3045 ("A surety . . . is liable to the creditor . . . for the full performance of the obligation of the principal obligor, . . . even in the absence of an express agreement of solidarity."); *Id.* cmt. (c) ("The creditor may include in the same suit both the principal obligor and the surety or he may sue the surety without joinder of the principal obligor."). The court of appeal's holding has the effect of foreclosing the exercise of preexisting contractual rights, which exist outside the parameters of the Act and are expressly preserved in the Act, between a subcontractor and the general contractor's surety.[6]

A court of appeal case, *"K" Construction, Inc. v. Burko Construction, Inc.*, 93-1338 (La. App. 4 Cir. 12/16/93), 629 So. 2d 1370, authored by former Chief Justice John Dixon sitting *pro tempore*, is instructive in its analysis of the relationship between La. R.S. 38:2242(B) and 38:2247 (post-1985 amendment). In *Burko* – a case, like this one, in which the claimant filed a lawsuit before the public

---

[6] We note further that R.S. 38:2241(C) contains language that purports to "immunize" sureties from liability for or payment of claims "not required by this Part." La. R.S. 38:2241(C) ("Sureties and contractors executing payment bonds for public works contracts under this Part shall be immune from liability for or payment of any claims not required by this Part."). It has been suggested that the aim of this provision is to "clearly state[] that a bond given pursuant to the Public Works Act is a statutory bond which is strictly construed and that only claimants who are specifically named in the statutes have a right to sue under the bond." La. Prac. Series: La. Constr. Law, § 13:10. Though this language is less than clear, there is no indication that it was intended to supplant contractual remedies that persons who qualify as "claimants" under the Act otherwise possess. This is consistent with the federal Miller Act, 49 U.S.C. § 3131, *et seq.* (related to federal public construction projects), which requires no special notice for claimants directly in contract with the general contractor. *See* La. Prac. Series: La. Constr. Law § 13:15 (noting that a subcontractor in a direct contractual relationship with a contractor is not required to give notice under the Miller Act before filing suit).

11

body filed its notice of acceptance or default – the court considered and rejected the same arguments made by the surety (and adopted by the court of appeal) in this case. The court noted that the case was unique, because the notice of default was filed long after the plaintiffs had sent notice of nonpayment to the general contractor and after the plaintiffs filed the lawsuit. In reasoning we find compelling, Chief Justice Dixon wrote:

> [The sureties] claim that although R.S. 38:2242 B says "may" instead of "shall," R.S. 38:2247's reference to the formalities of notice/filing and recordation as "requirements" causes the formalities to become mandatory. The sureties contend that the formalities are discretionary in R.S. 38:2242 B because that provision deals with perfecting a statutory claim against the prime contract funds in the hands of the public owner. R.S. 38:2247, they believe, is a separate provision for filing suit against the sureties in which the permissive provisions of R.S. 38:2242 B become mandatory.
>
> The sureties also claim that the "may" in R.S. 38:2242 simply means that a claimant has the option to: 1) file and record a sworn statement to "perfect" his statutory claim, or 2) not file and record a sworn statement and not have a "perfected" statutory claim. R.S. 38:2247, the sureties assert, is what creates a cause of action against the bond and it requires a perfected claim to proceed against the bond.
>
> The statutes do not, however, operate together as the sureties suggest. R.S. 38:2242 gives no consequence of not filing and/or recording the sworn statement. And, styled as a prescription article, R.S. 38:2247 does not actually create a cause of action on the bond. The assumption that the legislature intended to explain or limit R.S. 38:2242 in R.S. 38:2247 is not warranted.

*Burko*, 629 So. 2d at 1372.

We agree with the *Burko* court that any other interpretation of La. R.S. 38:2242 and 38:2247 would undermine the stated purpose of the Act: to protect those contributing to the construction, alteration, or repair of public works, not to foreclose preexisting contractual rights between parties. Here, as in *Burko*, Pierce filed suit against the surety long before the event occurred that triggers the 45-day period during which a claimant may file and record his sworn statement under La. R.S. 38:2242, as well as the prescriptive period of one year during which suit may be filed in accordance with La. R.S. 38:2247. As noted by Chief Justice Dixon in

12

*Burko*, the provisions of the Act simply do not address the situation where suit is filed prior to these triggering events. *Id.* at 1374 ("Simply put, the Public Works Act does not appear to envision a situation where suit is filed before the notice of default [or acceptance of the work by the governing authority] is recorded.").[7]

Because the statutory language at issue is ambiguous, and because the purpose of the Act is to assist laborers in recovery – not to immunize sureties where parties may proceed in contract – the purpose of the Act is effectuated by this decision.

## DECREE

Pursuant to the foregoing, we hold that Pierce's lawsuit was timely filed against the general contractor and its surety, Ohio Casualty, and that the failure of the plaintiff to perfect its privilege against the public authority (as found by the trial court) does not defeat its right of action against the surety. The decision of the court of appeal is reversed and the decision of the trial court is reinstated.

**REVERSED.**

---

[7] The other cases relied upon by the court of appeal are inapposite under the unique facts presented in this case, because the claimants in those cases (i) did not file a lawsuit before the notice of acceptance of work was filed, and (ii) filed their lien in the record after the expiration of the 45 day period. *See*, *e.g.*, *Gulf Coast Refrigeration, LLC v. Houma Terrebonne Hous. Auth.*, 13-1512 (La. App. 1 Cir. 3/24/14), 2014 WL 1175898, at *7 (unpublished), *writ denied*, 14-0855 (La. 6/20/14), 141 So. 3d 811 (lien filed and recorded more than 45 days after default and did not file lawsuit until months later); *John F. Sanchez Plumbing Co. v. Aetna Cas. & Surety Co.*, 564 So.2d 1302, 1303 (La. App. 1 Cir.1990), *writ denied*, 567 So.2d 1128 (La. 1990) (lien filed more than 45 days after notice of acceptance of work and lawsuit filed approximately three months later); *Interstate Sch. Supply Co. v. Guitreau's Constr. & Consulting Co.*, 542 So.2d 138, 139 (La. App. 1 Cir.1989) (sworn statement filed 46 days after recordation of the notice of acceptance).

05/03/16

# SUPREME COURT OF LOUISIANA

# NO.  2015-C-0785

# PIERCE FOUNDATIONS,  INC.

# VERSUS

# JAROY CONSTRUCTION,  INC.

**KNOLL, Justice, dissenting.**

I disagree with the majority's finding failure to comply with the notice and recordation requirements of La. R.S. 38:2247 does not affect the right of a subcontractor to proceed directly against the surety on the bond.[1] For the following reasons, I respectfully dissent. Indeed, to the contrary, I find the surety is immune from suit unless the subcontractor gives notice and recordation as required under the Public Works Act ("PWA"), the provisions of which must be ***strictly construed***. The majority clearly errs as a matter of law and reaches its result by broadly construing, notwithstanding it recognizes the statute requires strict construction, and misinterpreting the PWA.

As the majority correctly notes, the issue in this case concerns a subcontractor's direct right of action on the bond against the surety to which La. R.S. 38:2247 provides:

> Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and ***who has complied with the notice and recordation requirements of R.S. 38:2242(B)***, of ***his right of action on the bond*** furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default

---

[1] I do agree the Public Works Act does not prevent or prohibit a subcontractor's right of action against a general contractor with which the subcontractor shares contractual privity, but this issue is not presently before this Court.

of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, *he shall in addition to the notice and recordation required in R.S. 38:2242(B)* give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana. (Emphasis added).

Clearly, La. R.S. 38:2247 expressly reserves as well as grants the claimant (subcontractor) a direct right of action on the bond against the surety, *provided he first complies with the notification and recordation requirements of La. R.S. 38:2242(B)*.

The recognition of this direct action has been in the PWA since its inception, providing in Section 3 of Act 224 of 1918: "nothing in this act shall be so construed as to deprive any person or claimant within the terms of this act of his right of action on the [bond], which right shall accrue any time after the maturity of his claim."[2] Notably in Act 16 of 1962, the Legislature amended La. R.S. 38:2247, imposing the one-year prescriptive period for suits on the bond:

---

[2] In its entirety, Section 3 provided:

> Be it further enacted, etc., That any person, firm, corporation or association of persons or partnership to whom any money shall be due, on account of having done any work, performed any labor, or furnished any material in the construction, erection, alteration or repair of any such building, public road or public work or improvement shall within forty-five days after the acceptance of said work by the State, parish, city, town, village, public board or body, or within forty-five days after the default of the contractor or sub-contractor, file with the said authority a sworn statement of the amount due, and record a sworn statement thereof with the Recorder of Mortgages of the Parish in which the work is done, or being done, provided that the said 45 days shall not being to run until the said authorities shall record in the mortgage office of the parish in which the work was done as acceptance of the work, or notice of the default of the contractor or subcontractor, as the case may be; provided further that nothing in this act shall be so construed as to deprive any person or claimant within the terms of this act of his right of action on the bo[nd], which right shall accrue at any time after the maturity of his claim.

2

Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of *his right of action on the contractor's bond* which shall accrue at any time after maturity of his claim, which said action must be brought against the surety and/or the contractor within one year from the registry of acceptance of the work or of notice of default of the contractor.

The Legislature stated its purpose in enacting Act 16 was "[t]o amend and re-enact Section 2247 … to *define* the *rights* of persons or claimants *to have or bring a right of action against a contractor or the surety*." By expressly defining and limiting the right of action, the Legislature brought the claimant's direct action on the bond against the surety squarely within the protection of the PWA.

The LOUISIANA PRACTICE SERIES: LOUISIANA CONSTRUCTION LAW § 13:14 provides:

> The Louisiana Public Works Act contemplates that if there are unpaid claims at the expiration of forty-five days after recordation of acceptance or default, the public body can file a concursus proceeding, citing all claimants, the contractor and the surety on the bond, and requiring them to assert whatever claims they have against one another. If the public body does not file such a proceeding, any of the unpaid claimants may do so. In these proceedings, all claimants can assert their claims against the surety and the contractor, and those claims are paid in preference to any claims of the governing authority.
>
> As a practical matter, the concursus proceeding is very seldom used because claimants have a direct right of action against the contractor and the surety on the bond. This action can be filed any time after maturity of the claim, rather than requiring that the claimants wait for forty-five days after acceptance of the entire project, which in many cases could occur long after the claim matures.

It further provides:

> The Public Works Act also provides a separate remedy for claimants against the contractor and its surety who have complied with notice and recordation requirements of La. R.S. 38:2242(B). If the claimant is a materialman or laborer, this separate suit must be filed by the claimant against the contractor or the surety within one year after recordation of acceptance or notice of default. The Louisiana Supreme Court has held that a subcontractor's suit is also governed by the one year prescription period La. R.S. 38:2247.

*Id*. at § 13.11.

3

As authority, the authors cite to La. R.S. 38:2247 and *Honeywell, Inc. v. Jimmie B. Guinn, Inc.*, 462 So.2d 145, 148 (La. 1985) in which this Court, with Justice Marcus as organ, interpreted a previous version of La. R.S. 38:2247, which provided:

> Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor's bond which shall accrue at any time after maturity of his claim, which said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242 or give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work....

The Court concluded:

> … an unpaid subcontractor having a direct contractual relationship with the contractor may sue on the contractor's bond without filing and recording a sworn claim or giving written notice to the contractor. Although the action against the contractor is subject to the ten-year prescriptive period ordinarily applied to actions in contract, La.Civ.Code art. 3499, the action against the surety on the bond must be brought within one year from the registry of acceptance of the work by the governing authority….

*Honeywell*, 462 So.2d at 148.

In what can only be logically explained as action taken in response to the *Honeywell* holding, the Legislature immediately enacted Act 244 of 1985, amending La. R.S. 38:2247 to provide, as it presently does, that "Nothing in this Part shall be construed to deprive any claimant ... ***who has complied with the notice and recordation requirements of R.S. 38:2242(B)***, of ***his right of action on the bond***." It follows, therefore, where compliance with the notice requirements had not been necessary in order to proceed on the bond, the amendment evidences

4

a specific as well as explicit legislative intent requiring compliance with the notice requirements in order to do so, effectively "legislatively overruling" *Honeywell*.

Read this way, the specific language of La. R.S. 38:2247 requires compliance with the notice and recordation requirements of La. R.S. 38:2242(B) in order to proceed *via ordinaria* against the surety "on the bond." Thus, a subcontractor/claimant to preserve his direct right of action on the bond against the surety must: (1) "after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done," and (2) file suit "against the surety or contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor." La. R.S. 38:2247.

The Legislature went one step further in Act 244 by adding a provision to La. R.S. 38:2241(C), providing as it still does today: "***Sureties and contractors executing payment bonds*** for public works contracts under this Part ***shall be immune from liability*** for or payment of ***any claims not required by this Part***." Reading the term "claim" *in pari materia* with the definition of "claimant" contained in La. R.S. 38:2242 leads to the most reasonable conclusion that claim means "money … due pursuant to a contract … in the construction … of any public works." Clearly, if a claimant is seeking money due pursuant to his public work contract from the surety bond, his direct right of action against the surety on the bond is governed exclusively by the PWA and its notice/recordation requirements, otherwise the surety is "immune from liability … or payment of any claims." La. R.S. 38:2241(C).

5

Nowhere does the majority opinion address this key provision in the PWA—the immunity granted the surety under La. R.S. 38:2241(C)—, which renders the majority's analysis clearly erroneous. A proper statutory analysis would address the immunity provision, which the surety, Ohio Casualty, is urging in this case. The immunity provision clearly grants Ohio Casualty immunity because Pierce Foundation did not follow the notice and recordation requirements before (or even after) it filed suit against Ohio Casualty. By failing to address the immunity provision in the PWA, the majority reaches a flawed interpretation.

The majority randomly dismisses the mandatory requirements of notice and recordation and states: "We disagree with this holding, and find that where the subcontractor fails to comply with the notice and recordation requirements of La. R.S. 38:2242(B), the subcontractor loses his privilege against the funds in the hands of the public authority, but the failure to comply does not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety." Slip. Opn. at p. 8. This new twist in misinterpreting the PWA is nothing more than legislating from the bench by declaring "the subcontractor loses his privilege against funds" for failing to comply with the PWA. Nowhere does the PWA proclaim this. Moreover, the statement as to the subcontractor's privity of contract with the general contractor is misplaced. The contract between these two is not at issue. Importantly, there is no contract between the subcontractor and the surety. The issue before us does not concern contractual obligations, but rather how a subcontractor can make a claim for payment on the bond under the PWA directly against a statutory surety when the general contractor has gone "belly-up."

The majority opinion further fails to address the strong policy consideration of ensuring proportional payment of all claimants, which is the primary purpose of

the PWA, by requiring the queuing of claimants through recordation and preventing depletion of the bond until all claimants have an opportunity to notify and record their claims.

In its analysis, the majority summarily dismisses the appellate court's examination of legislative history in its search for legislative intent. However, by not addressing the steady and consistent changes made by the Legislature in direct correlation to misinterpretations rendered by this Court, I find the majority mistakenly focuses on its interpretation of the specific words used by the Legislature without examining why the Legislature employed those very words— its purposeful intent to rectify this Court's repeated attempts to expand the PWA beyond its terms. This jurisprudential history and later legislative amendments "overruling" this Court's opinions are very telling and important to a correct statutory interpretation of the PWA.

Concededly, the direct right of action of a subcontractor in direct contractual privity with the general contractor and his surety most likely first arose from our suretyship provisions. La. C.C. art. 3035.[3] However, over time, the Legislature brought the surety bond within the exclusive parameters of the PWA and, in doing so, transformed the direct right of action from contractual to statutory.[4] An in depth examination of the legislative history of the PWA—the actions taken by the

_____

[3] La. C.C. art. 3035 provides: "Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." And since the inception of our Civil Code, beginning in the Digest of Civil Laws of 1808, which became the Louisiana Civil Code of 1808, Louisiana has codified rules relating to suretyship, which gives creditors rights of action to proceed against the surety for fulfillment of the obligor's contractual obligation. *See* La. C.C. 1808, p. 428, Art. 1; La. C.C. art. 3004 (1825); La. C.C. art. 3035 (1870); *see also* CN 1804, Art. 2011 ("Celuí quí se rend caution d'une obligation, se soumet envers le créancier à satisfaire à cette obligation, si le dàbiteur n'y satisfait pas lui-même" translated "The person who becomes surety on a debt agrees with the creditor to satisfy the obligation if the debtor does not.").

[4] Significantly, the surety herein is not bound to the subcontractor. Rather, it is bound to the State by operation of the PWA. And unlike of old, the subcontractor is not privy to the surety contract; the surety has no contractual relationship with the subcontractor. The subcontractor's right of action on the bond now arises strictly from the PWA.

Legislature in direct response to interpretations of this Court—clearly reveals this transformation. The Legislature said as much in Act 16 of 1962.

Likewise, this Court has over time revised its interpretation of the limits of a surety's liability on the bond, starting from a statutory limitation then moving to a contractual expansion, returning to its statutory position, and now with the majority opinion resurrecting its contractual approach. And each time the Legislature has responded, with its last amendment expressly limiting the liability on the bond only to "claims … required by this Part."

Early on this Court held the bond was statutory and therefore limited by the statute:

> But the claimant contends that the bond executed by the appellant surety company is broader in its terms than those required by the statute. The bond provides, among other things, that the surety company will pay, if the contractor does not, 'all bills for materials and labor entered into in the construction of said work or used in the course of the performance of the work.' The engagement of the contractor's surety to pay for material and labor 'used in the course of the performance of the work' is, admittedly, more comprehensive than the requirement of the statute.
>
> The claimant argues that, whatever may be the inhibition imposed by the legislative act on the public body executing the contract and bond, there is no inhibition against the incurring by the contractor's surety of a liability beyond that fixed by the statute. In support of his argument, claimant cites certain decisions from other jurisdictions.
>
> But we see no reason for departing from the well-established rule of our own jurisprudence that in a statutory bond the statute must be read into the instrument; superadded stipulations must be disregarded and necessary obligations which have been omitted must be supplied. *John H. Murphy Iron Works v. United States F. & G. Co.*, 169 La. 163, 124 So. 768; *Minden Presbyterian Church v. Lambert*, 167 La. 719, 120 So. 61; *Miller v. Bonner*, 163 La. 342, 111 So. 776; *Davis v. West Louisiana Bank*, 155 La. 245, 99 So. 207; Id., 155 La. 252, 99 So. 210.

*Long Bell Lumber Co. v. S.D. Carr Const. Co.*, 172 La. 182, 187-88, 133 So. 438, 439-40 (1931). Then in *Construction Materials, Inc. v. American Fidelity Fire Ins.*

*Co.*, 388 So.2d 365, 366-67 (La. 1980), with Justice Dennis as organ, this Court

contrarily held a surety could contractually extend his liability:

> The statute's aim is to define the types of claims to be given protection and to make the governing authority responsible for their deduction and payment out of the contractor's receipts. The legislation clearly does not forbid a contractor and his surety from providing security for the payment of claims falling outside the ambit of statutory protection. In fact, the Public Works Act makes clear that it shall not be construed to deprive any person of his right of action on the contractor's bond. La.R.S. 38:2247, in pertinent part, provides:
>
>> "Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor's bond which shall accrue at any time after maturity of his claim . . . ."
>
> Defendant surety argues that this provision was intended to provide protection only for "a claimant within the terms" of the statute. We think it clear, however, that the section was designed to protect "any person" with a "right of action on the contractor's bond." Claimants whose claims fall within the ambit of the statutory protection have no need of the savings clause. It was specifically for the benefit of those persons and claimants whose rights depend solely on the contractor's bond that the section preserving their actions was added.
> The surety also contends that extending coverage of Public Works bonds will conceivably allow extra-statutory claims to dilute the protection afforded traditional claimants and public bodies. These are legitimate concerns addressing themselves to the legislative process, which thus far has given more weight to other considerations. One such consideration might be found in the words of the court of appeal, which aptly suggested that there is "little merit in a rule of law which permits a surety to evade the conditions of its own bond, which it has written, and for which it has charged a premium . . . ." 383 So.2d at 1294.

*Construction Materials, Inc.*, 388 So.2d at 367. Through its enactment of the 1985

amendments, discussed *supra*, the Legislature codified this Court's earlier position

on the bond's statutory nature. Then in *State v. McInnis Brothers Const.*, 97-0742

(La. 12/12/97), 701 So.2d 937, this Court once again adopted the interpretation of

the bond as statutory:

> As explained in *Wilkin*, *supra*, La. R.S. 38:2241 *et seq.* require of the general contractor a statutory bond (the labor and materials

payment bond) and give to the qualifying claimant a "privilege against the unexpended fund in the possession of the authorities." *Wilkin*, 561 So.2d at 70.... Because it is required by the statute and the parties are not free to enter into the contract without it, the bond is in the nature of a statutory bond which exists for the benefit of the public authority and in essence creates a "privilege" or a source of funds available to the State should it be successful in a suit against the general contractor and the surety .... "The Act is to be strictly construed and the liability of the surety should not be expanded beyond the statute." *Metro Builders Hardware, Inc. v. Burko Construction, Inc., et al.*, 93-1970 (La.App. 4th Cir. 2/25/94), 633 So.2d 838, *writ denied*, 94-0727 (La.5/6/94), 637 So.2d 1049. "[T]he obligations of a statutory bond are limited to the exact provisions of the statute." *Martinolich v. Albert*, 143 So.2d 745, 747 (La.App. 1st Cir.1962).

*McInnis Brothers Const.*, 97-742 at pp. 9-10, 701 So.2d at 944.

Our role as civilian jurists is to interpret the laws in search of the Legislature's intent. In this matter, the Legislature has made clear its intent to limit the liability of the surety on the bond to only those claims provided for in the PWA. Under the facts herein, the only right of action on the bond the PWA recognizes and provides for is that of a claimant "who has complied with the notice and recordation requirements of R.S. 38:2242(B)." The majority's reading of the statutory language authorizes a right of action on the surety bond arising from the "contractual privity" between the general contractor and the subcontractor not provided for by the PWA in direct contravention of the immunity provisions set forth in La. R.S. 38:2241(C). In so doing, the majority once again adopts the position of this Court in *Honeywell* and *Construction Materials, Inc.*, which ironically prompted the very amendments we are now charged with interpreting. Therefore, in my view, the only interpretation that will give effect to all the statutory provisions and comply with the Legislature's expressed intent is one that requires compliance with the notice and recordation requirements before a subcontractor may proceed directly against the surety on the bond.

Much is also made by the majority herein of *"K" Construction, Inc. v. Burko Construction, Inc.*, 629 So.2d 1370 (La. App. 4th Cir. 1993), authored by former Chief Justice Dixon, then sitting *pro tempore*, in which the court held:

> styled as a prescription article, R.S. 38:2247 does not actually create a cause of action on the bond.
>
> …
>
> While it is arguable that the reason for the notice provision of R.S. 38:2242 is to ensure that the governing authority and its surety are not subject to claims long after a project is completed, it is not reasonable to penalize a sub-contractor who has given timely notice sufficient to apprise the governing authority of its claim, merely omitting to provide the governing authority with a sworn statement.
>
> …
>
> Simply put, the Public Works Act does not appear to envision a situation where suit is filed before the notice of default is recorded. Consequently, ***our task is to determine if what the claimants did in this case was sufficient to notify HANO and, in Laurent's case, Burko of the claims***.

*"K" Construction, Inc.*, 629 So.2d at 1372-74 (emphasis added). This interpretation is flawed, however, in its complete failure to recognize as well as preserve the notice to other claimants, which the recordation requirement of La. R.S. 38:2242(B) is meant to ensure. Further, in holding La. R.S. 38:2247 is merely prescriptive, the question from where does the right of action arise is left unanswered. The logical resolution of this inquiry is ultimately fatal to *"K" Construction's* conclusion because if the right does not arise from the PWA, the subcontractor's action is preempted by the surety's statutory immunity.

Guided by the Legislature's intent expressed in its 1962 and 1985 amendments to the PWA, I find a claimant, in order to maintain its direct action against the surety on the bond under La. R.S. 38:2247, must first satisfy the notice and recordation requirements of La. R.S. 38:2242(B) as well as file suit within the one-year prescriptive period; otherwise, its action on the bond prescribes. This interpretation ensures the primary purpose of the PWA—the proportional payment of all claims—is both met and satisfied.

11

Finally because its holding is contrary to this interpretation, I would overrule *"K" Construction*. And I would strongly discourage reliance on any statement in the LOUISIANA PRACTICE SERIES, which likewise does not conform to the Legislature's clear intent recited above.

05/03/16

# SUPREME COURT OF LOUISIANA

# NO.  2015-C-0785

# PIERCE FOUNDATIONS, INC.

# VERSUS

# JAROY CONSTRUCTION,  INC.

**GUIDRY, Justice, dissents and assigns reasons.**

I disagree with the majority's holding that failure to comply with the notice and recordation requirements of La. Rev. Stat. 38:2247 does not limit the right of a subcontractor, in contractual privity with the general contractor, to proceed directly against the surety on the statutory bond.  I do not disagree that there is arguably some ambiguity at first glance in the permissive language used in La. Rev. Stat. 38:2242 and the language used in La. Rev. Stat. 38:2247.  However, in my view the interpretation of the two statutes made by the court of appeal best follows the intent of the legislature and the Public Works Act, La. Rev. Stat. 38:2241 *et seq*.

I agree with the majority that the Act is intended to protect those contributing to the construction, alteration, or repair of public works, rather than to foreclose preexisting contractual rights between parties.  In enacting the subject version of La. Rev. Stat. 38:2247, the legislature sought to define the rights of persons or claimants to have or bring a right of action against a contractor or a surety.  Acts 1962, No. 16.  In my view, one purpose of the notice requirements of La. Rev. Stat. 38:2242 is to ensure the governing authority and the statutory surety are not subject to claims long after a project is completed.  See *"K" Construction, Inc. v. Burko Construction, Inc.,* 629 So.2d 1370, 1374 (La. App. 4th Cir. 1993),

However, I do not believe that is the only purpose. The notice to the governing authority, together with recordation in the public records as required in La. Rev. Stat. 38:2242(B), also alerts other claimants and interested persons to the subcontractor's claim against not only the contractor, but also any claims on the statutory bond. As the majority opinion notes, the Act, in lieu of a lien against the public work itself, gives claimants a privilege against the unexpended funds in the possession of the public entity, including certain claimants like materialmen and laborers who do not enjoy contractual privity with the general contractor or the governing authority. Slip op. at 4, citing *Wilkin v. Dev. Con Builders, Inc.*, 561 So.2d 66, 70 (La. 1990). The governing authority, however, is also protected if it complies with the Act. *Id.* The bond itself, deemed a statutory bond, need only be at least 50% of the contract price. La. Rev Stat. 38:2241(A)(2). Importantly, sureties and contractors executing payment bonds for public works contracts under this Act "shall be immune from liability for or payment of any claims not required by this Part." La. Rev. Stat. 38:2241(C). Ultimately, because the pool of funds established by the statutory bond may be finite, the Act is intended to provide proportional payment to all eligible claimants.

To that end, I believe La. Rev. Stat. 38:2247 is intended to put all of the claimants, whether in contractual privity with the general contractor or not, on relatively equal footing when it comes to asserting their statutory liens, or privileges, against the surety on the bond. The subcontractor who enjoys contractual privity with the general contractor may nonetheless exercise his right of action directly against the contractor, and most assuredly so, but he may also proceed directly against the surety on the statutory bond, *so long as he first establishes his statutory lien or privilege as required by La. Rev. Stat. 38:2242(B).* I see no unreasonable intrusion into the contractual rights of the subcontractor in

2

such a situation, as he may still proceed against the contractor, in any case, but he may also proceed against the surety without waiting until after the recordation of acceptance of the work by the governing authority. The only condition for proceeding against the surety on the statutory bond is compliance with the notice and recordation requirements of La. Rev. Stat. 38:2242. In my view, this reading of the two statutes *in pari materia* gives effect to all of the language in both. Accordingly, I would find that a claimant to maintain his direct action against the surety on the statutory bond under La. Rev. Stat. 38:2247, must first establish his privilege thereon through the notice and recordation requirements set forth in La. Rev. Stat. 38:2242(B), as well as file suit within the time limitations of La. Rev. Stat. 38:2247.

05/03/16

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-0785

## PIERCE FOUNDATIONS, INC.

### VERSUS

## JAROY CONSTRUCTION, INC.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIFTH CIRCUIT, PARISH OF JEFFERSON

**HUGHES, J.**, dissents for the reasons assigned by Guidry, J., and assigns additional reasons.

The courts are supposed to follow the law, not make it.

Louisiana Revised Statute 38:2241(C) provides, in pertinent part: "Sureties and contractors executing payment bonds for public works contracts under this Part shall be *immune* from liability for or payment of any claims not *required by this Part*." (Emphasis added.)

The Louisiana Supreme Court, in an opinion authored by Justice Kimball, stated that:

> It is a long standing principle of statutory interpretation that "[a]s a general rule, lien statutes are stricti juris and should thus be strictly construed." **Guichard Drilling Co. v. Alpine Energy Services, Inc.**, 94-1275 p. 7 (La. 7/3/95), 657 So.2d 1307, 1313, rehearing denied (La. 1995). "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes." *Wilkin*, supra, 561 So.2d at 71. See also **American Creosote Works, Inc. v. City of Natchitoches**, 182 La. 641, 162 So. 206 (1935); and **Rester v. Moody & Stewart**, 172 La. 510, 134 So. 690 (1931). "The Public Works Act is sui generis and provides exclusive remedies to parties in public construction work." **U.S. Pollution Control, Inc. v. National American Ins. Co.**, 95-153 p. 4 (La. App. 3d Cir. 8/30/95) 663 So.2d 119, 122.[1]

---

[1] **U.S. Pollution Control** was authored by Judge, now Justice, Jeannette Theriot Knoll.

**State Division of Administration v. McInnis Brothers Construction**, 97-0742 (La. 10/21/97), 701 So.2d 937, 944.

In the present case the claimant intentionally chose not to comply with the Public Works Act and did not comply with the notice and recordation requirements of this Part. The statutory surety is therefore immune.